THE C. B. ROGERS COMPANY, PLAINTIFF IN ERROR, VS. MEINHARDT BROS. & CO., DEFENDANTS IN ERROR.

1. The second paragraph of section 1088, Revised Statutes, has not curtailed the province of the jury in passing upon the facts of a case, nor has it enlarged the powers of the court as to its determination of the facts.

2. The rule established by the statute is that if no evidence is introduced upon which a jury may lawfully find a verdict for one party, a direction may be given to find for the opposite

party, but the judge should never direct a verdict for one party, unless the evidence is such that no view which the jury may lawfully take of it favorable to the other party can be sustained.

3. In all cases where there is room for difference of opinion between reasonable men as to the existence of facts from which an ultimate fact is sought to be established, or when there is room for such difference as to the inferences which might be drawn from conceded facts, the court should submit the case to the jury for their finding, as it is their conclusion, in such cases, that should prevail, and not the views of the judge.

4. The duty devolving upon the court in reference to directing a verdict on the evidence may become, in many cases, one of delicacy, and should be cautiously exercised.

5. A wide latitude is permitted in the proof of fraud, and testimony tending to show that a debtor, in failing circumstances, immediately before a sale of his entire property, stated to other parties than the purchaser that he wanted money, and they could have his property at their own price, is admissable as bearing upon a fraudulent purpose in the disposition of the property.

Writ of Error to the Circuit Court for Orange county.

The facts in the case are stated in the opinion of the court.

*J. M. Cheney,* for Plaintiff in Error.

*Beggs & Palmer,* for Defendants in Error.

MABRY, C. J.:

This is a claimant's suit in which the plaintiff in error sued out an attachment against one Paul E. Canova, and caused it to be levied upon a stock of goods alleged to belong to him. Defendants in error claimed the goods levied upon, and filed an affidavit and bond

under the statute. At the following term of court a jury was sworn to try the right of property, and at the conclusion of the argument of counsel, after all the evidence had been submitted, the court instructed the jury to return a verdict for claimants, and refused to give certain instructions asked by the plaintiff in attachment. A verdict was rendered in accordance with the direction of the court, and judgment for claimant entered thereon. The refusal to admit certain evidence on behalf of the plaintiff, the giving of the peremptory charge for claimants, and the failure to submit the case to the jury on the facts under the charges requested, are assigned as errors.

The instruction to the jury to return a verdict for claimants involves a consideration of the evidence submitted in the case. The trial was after the Revised Statutes became operative, and before we refer to the evidence, the provision in the revision, that the circuit or county courts may, under certain conditions, direct a jury to find a verdict, demands notice. The statutory command that the trial court should charge the jury only upon the law of the case, found in the act of 1877, and incorporated into the first part of section 1088 of the Revised Statutes has received a uniform construction by this court that the judge must not charge upon the weight of the evidence or the credibility of the witnesses. Williams vs. LaPenotiere, 32 Fla. 491, 14 South. Rep. 157, and cases cited. In addition to the original provision of the act of 1877 (Rev. Stat., sec. 1088) the revision contains the following, viz: "If, however, upon the conclusion of the argument of counsel in any civil case after all the evidence shall have been submitted, it be apparent to the Judge of the Circuit Court, or county court, that no

evidence has been submitted upon which the jury could lawfully find a verdict for one party, the judge may direct the jury to find a verdict for the opposite party." We do not see that this new statutory feature has in any respect curtailed, or attempted to curtail, the province of the jury in passing upon the facts of a case, nor has it undertaken to enlarge the powers of the court as to its determination of the facts. Two views have been entertained in the American courts as to the authority of the trial judge, independent of statute, to direct a jury to find a verdict. One is, that if there is evidence tending in any degree to establish the cause of action, or defense thereto, the questions of fact involved should primarily be left to the jury to find. This rule goes to the extent of requiring the court to submit the case to the jury upon the evidence when it only tends to prove the issue, although the court should feel bound to set aside the verdict if the jury should find contrary to its views. Way vs. Illinois Central R. R. Co., 25 Iowa, 585; Stephens vs. Brooks, 2 Bush, 137. The courts holding this view recognize the right of either party to have his case submitted to the jury, and nothing in the nature of a compulsory non-suit is permitted. The other view is, that when the facts are not controverted, their consideration may be withdrawn from the jury when, if submitted to them, a contrary verdict would be set aside as against the weight of the evidence. Dryden vs. Britton, 19 Wis. 22; Cutler vs. Hurlbut, 29 Wis. 152; Lane vs. Old Colony and Fall River R. R. Co., 14 Gray, 143; Thompson vs. Pioneer Press Co., 37 Minn. 285, 33 N. W. Rep. 856; Callahan vs. Warne, 40 Mo. 131; Wilds vs. Hudson River R. R. Co., 24 N. Y. 430; Algur vs. Gardiner, 54 N. Y. 360; Godin vs. Bank of

Commonwealth, 6 Duer, 76; Brown vs. European & North American Ry. Co., 58 Maine, 384. The statute has established the rule in this State that if it be apparent to the judge upon the conclusion of the argument of counsel in a civil case, after all the evidence is submitted, that no evidence has been offered upon which they could lawfully find a verdict, he may direct a verdict for the opposite party. Under the statute we take it that when the facts are not in dispute, and the evidence, with all the inferences that a jury can lawfully deduce from it, does not, as matter of law, have a tendency to establish the cause of action or the defense thereto, the judge may direct the jury to return a verdict for the party entitled to the same. If, however, there is conflicting evidence, or a dispute as to what actually occurred, and any view that the jury might lawfully take of it will sustain their findings for either party, the facts should not be withdrawn from them. To state the rule differently the judge should never direct a verdict for one party, unless the evidence is such that no view which the jury may lawfully take of it favorable to the other party can be sustained. As stated above, the statute has not in any respect curtailed the province of the jury as to determination of the facts, and in all cases where there is room for difference of opinion between reasonable men as to the existence of facts from which an ultimate fact is sought to be established, or when there is room for such difference as to the interferences which might be drawn from conceded facts, the court should submit the case to the jury for their finding. In such cases it is the conclusion of the jury on the facts that should prevail, and not the views of the judge. The duty devolving upon the court to direct a verdict for

one of the parties litigant will, in many cases, become one of delicacy, and the right should be cautiously exercised in order to avoid expense and delay to which parties may be subjected. In the present case the court should not, in our opinion, have withdrawn it from the consideration of the jury under proper instructions. The question involved was whether an alleged sale from Canova, the attachment debtor, to claimants was valid and free from fraud.

We purposely abstain from expressing any views as to the full probative force of the facts and circumstances submitted to the jury, and will only state the leading facts to indicate our views why the case should have gone to the jury. It appears that Canova was indebted to Meinhardt Bros. & Co. and Frank & Co., both composing the same members under different firm names, in the sum of $2,100, and was in failing circumstances, or, as expressed by the agent of claimants in testifying for them, "was about to go under." The agent with full knowledge, as he admits, of Canova's financial condition, went to him to get the claims protected. The result was that Canova put the claims in the shape of notes, one payable on demand, and the other one day after date, and executed a chattel mortgage, on the 10th of October, 1892, the date of the notes, on the stock of goods in question to secure the debt. This mortgage contains a stipulation that the mortgagor should retain possession of the property and retail it to customers, and to use the proceeds to purchase goods, and to enable him to do business as though the mortgage had not been given. The further provision is inserted that all new goods purchased and placed in the store should be subject to the lien of the mortgage. Immediately after the mortgage was exe-

cuted, which was in Orlando, Florida, where Canova was doing business, and where the agent resided, they both went to Savannah, Georgia, where claimants were doing business. The object of the visit, as expressed by the agent, was to have a consultation with claimants about the security taken. Canova and claimants' agent returned to Florida, and on the evening of the 13th of the same month and year the agent states that between seven and eight o'clock he went to Canova and informed him that the immediate possession of the stock of goods was desired, which he voluntarily gave, and also a receipt which in legal effect, is a bill of sale of the entire stock of goods. The agent immediately took possession and was in possession next day when the attachment was levied upon the goods. When the mortgage was executed and invoice of the stock was taken, and the agent was taking another invoice at the time the attachment was levied. The invoice at cost and carriage amounted to forty six hundred dollars, and the entire stock was taken for the debt of two thousand one hundred dollars. The agent and Canova say nothing about the value of the goods, but claimant proved by two merchants that the stock was broken, and fifty cents on the dollar was, in their opinion, a fair valuation of it. There was also testimony to the effect that Canova had put up notices in the show windows of the store that he would sell his goods for cash at a sacrifice, and the agent of claimants had full knowledge of this fact before the mortgage and bill of sale were executed. Plaintiff in attachment offered to prove by a merchant in Orlando that shortly before the mortgage was executed Canova stated that he wanted money, and proposed to the merchant that he could go to the store and get goods at his own price. This tes-

timony was excluded by the court. We think that this should have been admitted. It was before the sale, and though it was not shown, or offered to be shown, that the agent knew of the offer, he did know, as he admits, that Canova was failing, and was offering his goods at a sacrifice. A wide latitude is permitted in the proof of fraud, and under the circumstances of the case the rejected testimony should have been admitted as bearing upon the intent of Canova to fraudulently dispose of his goods and put them beyond the reach of his other creditors. Canova admits his friendly feelings for claimants, as they had been lenient with him; and while he says that there was no agreement between them that he should have what remained after the sale of the goods and payment of the debt due claimants, he admits that he expected something.

There are additional circumstances bearing upon the question of the *bona fides* of the sale which we do not state, but in view of the fraudulent character of the mortgage, which was the initiatory step in the negotiation between the parties, and all the other circumstances of the case, we think it was improper to withdraw the case from the jury as was done.

As appears from the record, the judge did not pass upon the correctness of the charges asked, as they were refused, as he states, because of the peremptory charge given to find for the claimants. Without considering the charges requested, we will order a reversal of the judgment, with directions that upon a similar state of facts the court will submit the case to the jury under proper instructions.

Ordered accordingly.