Bruner *et al.* v. Hart *et al.*—Syllabus.

---

RICHARD BRUNER *et al., Plaintiffs in Error,* v. WILLIE GREENE HART *et al., Defendants in Error.*

Where it plainly appears from the evidence that the plaintiffs, in an action of ejectment, when the only issue is one of title, have established no legal title to the land in dispute, the Circuit Judge commits no reversible error after the evidence is all before the jury, in directing a verdict for the defendants.

This case was decided by the court En Banc.

Writ of error to the Circuit Court for Jackson County.

The facts in the case are stated in the opinion of the court.

*Wm. B. Farley* and *John M. Calhoun,* for Plaintiffs in Error;

*Benj. S. Liddon* and *C. L. Wilson,* for Defendants in Error.

(ON REHEARING.)

HOCKER, J.—Since the original opinion was filed in this case, a petition for a rehearing has been presented, and as an error of fact is pointed out in the petition, we have reconsidered the case, and present our views in the following opinion.

Richard Bruner, Annie Kirkland, Lugenia Davis and her husband, Fred Davis, Sallie Ledbetter, William Ledbetter, Oscar Ledbetter, Callie Jones and M. Jones, her husband, Manse Bruner, James Bruner, Belle Bruner, Bettie Ledbetter and George Ledbetter, her husband, Alice Bruner, Everett Mathias and Jessie Mathias, by her next friend, Everett Mathias, brought an action of ejectment in the Circuit Court of Jackson County, in December, 1907, against Willie Greene Hart and M. B. Hart, her husband, for possession of the West-half of the North-east quarter and the East-half of the North-west quarter of section 30, Tp. 7 N., Range 11 W., situated in Jackson County.

There was a plea of not guilty by the defendants and in November, 1908, a trial was had.

After the evidence was all in, the Circuit Judge gave an affirmative charge for the defendants which resulted in a verdict and judgment in their favor.

The case is here on writ of error, and one of the assignments challenges the propriety of the affirmative charge. The plaintiffs in the suit below were all children or grand children, (joined in some instances by their husbands) of William J. Bruner and claim title through him. The plaintiff introduced in evidence a patent from the United States Government, dated the first day of December, 1857, for the E. $\frac{1}{2}$ of the N. W. $\frac{1}{4}$, Section 30, Tp. 7 N., R. 11 W. This patent contained an endorsement in the following words:

"For value received, I hereby deliver unto Sion Bradshaw the within title to land, Feby. 25, 1859.

Attest:　　　　　　　　　　　　　　his
John L. Hayes."　　　　　　　　　W. J. x Bruner.
　　　　　　　　　　　　　　　　　　mark

No written evidence of any kind was introduced showing title in William J. Bruner to the W. ½ of the N. E. ¼ of Sec. 30, Tp. 7, Range 11 W.

He died in 1859. He lived on the 160 acres involved in the suit some years before his death, but exactly how long, does not appear.

The evidence is not sufficient to show title by adverse possession in him to the above described 80 acres at the time of his death.

The defendants introduced in evidence a warranty deed dated 25th day of February, A. D., 1859, purporting to be executed by Wm. J. Bruner, conveying the land involved in this suit to one Sion Bradshaw, his heirs and assigns for the consideration of five hundred dollars. The deed is signed in the following manner:

　　　　　　　　　　　　　　　his
Test:　　　　　　　"Wm. J. Bruner, x　L. S.
　　his　　　　　　　　　　　mark
John x Bruner
　　mark　　　　　Sarah X Bruner,　L. S.
Jno. L. Hays."

There does not appear to be any acknowledgement of this deed by W. J. Bruner, but there is what purports to be one by Sarah Bruner on the 9th January, 1860, and also, what purports to be a quit-claim of her right of dower in said lands on the 9th January, 1860.

The plaintiffs objected to the introduction of this deed because, (1) it has not two subscribing witnesses, (2)

does not show any delivery to Sion Bradshaw, (3) is in the possession of the grantor's, (4) it is not joined in by husband and wife, (5) the land appears to be a homestead. These objections were overruled. We will discuss such of these as are presented here. The evidence shows the following facts: Wm. J. Bruner sold this tract of land to Sion Bradshaw for $500.00, which was paid him in gold. This deed according to the testimony of Richard Bruner, who claims to have been about twelve years old when it was executed and who is one of the plaintiffs and a principal witness for them, was placed in the hands of his uncle John Bruner, who was to hold it until Bradshaw had taken final possession of the land described in it. Richard Bruner claims that Bradshaw never did take possession of the land, and the deed was never delivered to Bradshaw. Neither he, nor any other of the plaintiffs testify that the deed was placed in John Bruner's hands upon any sort of condition whatever, nor that the grantor therein, when he placed it in John Bruner's hands reserved any sort of control over the deed. It was simply to be actually delivered to Bradshaw when he took possession of the land. Very soon after the execution of this deed Wm. J. Bruner died, and Sarah Bruner, his wife removed with her children to Alabama. There is conflict in the testimony as to whether Bradshaw took possession of the land when she left for Alabama. None of the children were grown. For some reason Mrs. Bruner became anxious to return to her former home in Florida, and some sort of negotiations with Bradshaw followed which resulted in Bradshaw's executing and delivering a warranty deed to W. $\frac{1}{2}$ of N. E. $\frac{1}{4}$ of the land now in dispute to William J. Whitfield, who married Mrs. Sarah Bruner's oldest daughter; Whitfield paying $500.00, in gold to Bradshaw,—the same amount of gold which Bradshaw had paid W. J. Bruner, for the 160

acres.   Mrs. Sarah Bruner, the ancestress of the plain-
tiffs became possessed of the patent and these two deeds
and kept them in her possession for some years and then
they were kept sometime by Richard Bruner, her son,
and Jim Bruner, another son, and other members of her
family.

As soon as the deed was made by Bradshaw to Whit-
field, Mrs. Sarah Bruner returned to live upon this 160
acres of land, with her children, none of whom were
grown, and so far as we can discover from the evidence
continued in undisputed control and possession of it for
about thirty-four years.

John Paulk, a witness for the plaintiffs, testifies that
he knew the Bruners and the land in controversy; that
several years ago, he was at Mr. Hart's and proposed to
buy the place of Mrs. Sallie Bruner, who "said she could
not sell it as long as she lived;" that it was always
claimed in the settlement as Mrs. Bruner's land.   George
Ledbetter, another witness for the plaintiffs testified that
he rented some of this land from Jim Bruner, who rented
it from Mrs. Bruner, that the next year he rented it from
her; that he worked the place in '85, '90 and '91 and paid
the rent to Mrs. Bruner; that when he got acquainted
with the Bruners, they were living together on the place,
and that the old lady, Mrs. Bruner, was the boss. The chil-
dren grew up there and were there married.   Mrs. Bruner
continued to live on the place until 1886, when she went
to live with Richard Bruner, her son.   She lived with
him for four or five years and then with Jim Bruner for
a year or two.   From Jim Bruner's she went to live with
her youngest daughter, Mrs. Hart in 1894, and lived with
her until she died in 1904.   In that year Mrs. Sarah
Bruner executed and delivered a deed of the property in
dispute to her daughter Willie Hart.   The consideration
expressed therein is the sum of five dollars and natural

love and affection.    This deed was acknowledged on the
31st August, 1894, and filed for record on the 4th Sep-
tember, 1894, apparently in Jackson County.    Willie Hart
and her husband seem to have had possession of the land
in dispute ever since 1894.

The plaintiffs contend that Mrs. Hart took possession
of this property under an agreement with the heirs of
W. J. Bruner, that Hart and his wife would support and
take care of Mrs. Sarah Bruner in her old age for the
rents and profits of the land.    The Harts deny this
agreement.

It was on the demand of the plaintiffs that the defend-
ants introduced the deeds from Sion Bradshaw to Whit-
field.    The deeds to Bradshaw and Whitfield seem to have
been carefully preserved by Mrs. Sarah Bruner and her
children.

The continued possession of the deed by the grantor is
a circumstance tending to show that it has not been de-
livered to the grantee; but in this case, it is asserted by
the plaintiffs that the grantor Wm. J. Bruner delivered
the deed to John Bruner to be delivered to Bradshaw
when he took possession of the land.    There was no sort
of condition attached to the delivery to John Bruner.
This deed is clearly shown to have been over thirty years
old, and an ancient document, but it is contended it is not
properly witnessed as one of the subscribing witnesses
makes his mark instead of writing his name himself.    It
seems to us that a subscribing witness to a deed may
properly become such a witness by making his mark,
unless there is something in the statute which forbids
such a method of attestation.    Garrett v. Heflin, 98 Ala.
615, 13 South. Rep. 326, 39 Am. St. Rep. 89; Tatom v.
White, 95 N. C. 453; Pridgen v. Pridgen, 13 Ired. L.
(N. C.) 259.    There is nothing in our statute which re-

quires a witness to a deed to write his own name or which forbids his subscribing his name by making his mark.

We also think that the possession of Mrs. Sarah Bruner and subsequently of her children, of the deed to Bradshaw, is explained by all the facts and circumstances as showing that the title to the property in dispute, passed to Bradshaw, and 80 acres of it from the latter to Mrs. Bruner's son-in-law Whitfield. · It is clearly inferable from Richard Bruner's testimony that Whitfield, who married his oldest sister, paid the $500.00, to Bradshaw, and took a deed himself, for the benefit of the family, as he moved them back upon the property after he bought the 80 acres of Bradshaw. Why should Whitfield have taken a deed from Bradshaw, if Bradshaw had no legal title? The plaintiffs do not give any explanation of this clearly proven and admitted fact. It makes no difference in the case at all whether Bradshaw ever received the deed from John Bruner. He evidently knew that John Bruner had the deed, and that it was given to John Bruner to be delivered to him.

Where a deed is placed in the hands of a third party, the question whether the grantor intended a complete and unconditional delivery is one of fact in the solution of which all the circumstances surrounding the transaction may be shown. 4 Ency. Ev. 177; Bury v. Young, 98 Cal., 446, 33 Pac. Rep. 338, 35 Am. St. Rep. 186, and cases cited; Hosley v. Holmes, 27 Mich. 416; 13 Cyc. 564.

Bradshaw recognized that the legal title was in himself to this property and conveyed part of it to Whitfield. And the uncontroverted acts of the parties to this suit, in preserving the deed to Bradshaw, and Bradshaw's deed to Whitfield and then Mrs. Sarah Bruner's coming from Alabama with Whitfield and going into possession of the land show better than words that they all recognized the fact that the title to the property had been transferred

to Bradshaw and 80 acres of it by Bradshaw to Whitfield. What may be the equitable rights of the parties to this suit, growing out of the alleged agreements amongst themselves, we do not consider, as it is not proper to do so in a common law suit like the present one.

We are of opinion that as to the W. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$ S. 30, Tp. 7 N. R. 11 W., the plaintiffs have shown no title in their ancestor W. J. Bruner, and that as to the E. $\frac{1}{2}$ of N. W. $\frac{1}{4}$ S. 30, Tp. 7, N. R. 11 W., the title passed to Bradshaw by the deed from W. J. Bruner. Some contention is made that Mrs. Sallie Bruner and her children held the land as tenants in common, but we can discover no foundation whatever, for any such claim. Mrs. Sallie Bruner, on the death of her husband became the head of the family. She raised her children on the land. She exercised dominion over it, and if any title was acquired to it by adverse possession against those who held the legal title, it seems to have been acquired by her. We know of no law which under the circumstances would have created the relation of tenants in common between herself and her children.

We are therefore of opinion that the Circuit Judge committed no error in charging the jury to find a verdict for the defendants as there was no evidence upon which they could have found one for the plaintiffs. Bass v. Ramos, 58 Fla. 161, 50 South. Rep. 945.

There are many other assignments of error, but it is unnecessary to discuss them, as they relate either to the reception or rejection of evidence which under the circumstances could not affect the right of the plaintiffs to recover.

The petition for rehearing is denied.

All concur except TAYLOR, J., not participating.