MAMIE VARNES, AS ADMINISTRATRIX OF THE ESTATE OF ROBERT FOX, DECEASED, *Plaintiff in Error*, v. SEABOARD AIR LINE RAILWAY COMPANY, A CORPORATION, *Defendant in Error*.

Opinion Filed October 29, 1920.

1. In an action for damages for the wrongful death of one caused by a railroad corporation acting through its special agent, servant or employee, the plea of not guilty does not admit that the person through whose conduct the deceased was killed was the special agent, servant or employee of the defendant, and the burden of proving the relation is upon the plaintiff.

2. Inducement in pleading is the statement of matter which is introductory to the principal subject of the declaration or plea and which is necessary to elucidate or explain it.

3. Where the evidence will not warrant a verdict for one party to an action, the trial court should direct a verdict for the opposite party.

A Writ of Error to the Circuit Court for Hillsborough County; F. M. Robles, Judge.

Judgment affirmed.

*Dickenson & Dickenson,* for Plaintiff in Error;

*Knight, Thompson & Turner,* for Defendant in Error.

ELLIS, J.—This was an action by Mamie Varnes, as administratrix of the estate of Robert Fox, who was her son, against the Seaboard Air Line Railway for damages for his alleged wrongful death. The declaration in three counts alleges in substance that on the night of June 7th, 1917, Robert Fox was a trespasser upon a freight train of the defendant company running between Jacksonville and Tampa; that C. C. Hicks was a special agent or special officer, servant, agent and employee of the defendant charged by it with the special duty and authority of protecting said train from trespassers and preventing the intrusion of trespassers upon the said train, and preventing trespassers from stealing rides or transportation or beating their way upon the said freight train. This is the language of the declaration alleging the relation of Hicks to the railroad company: It alleged that Hicks while acting within the scope of his authority and in the

capacity of special agent or special officer of the defendant as aforesaid, sought to prevent Fox from riding or beating his way upon the train, and to rid the train of the presence of Fox and to eject him from the train while it was in motion, shot and killed him. The second count alleges that Hicks wantonly and wilfully ejected Fox from the train while it was in rapid motion, causing him to fall to the ground, which caused his death. The third count alleges that Hicks shot and killed Fox to prevent him from re-entering or coming upon the train after Hicks had caused Fox to leave it, and while he was on the ground near the track.

The defendant pleaded not guilty. This was a denial of the defendant's wrongful act. Rule 71, Law Actions.

The defendant's liability for Fox's death existed, if at all, under the doctrine of *respondeat superior*. Therefore the burden rested upon the plaintiff to show that Hicks was a special agent or special officer, servant, agent or employee of the defendant, charged by it with the special duty and authority of protecting that train from trespassers and preventing the intrusion of trespassers upon it, or preventing them from stealing rides or transportation or beating their way on it, and that he killed Fox as alleged while Hicks was acting within the scope of his authority as such special agent.

The parties went to trial upon the issue joined, and on motion of the defendant the court instructed a verdict for the defendant. The verdict was rendered and judgment entered for the defendant. The plaintiff took a writ of error.

There was ample evidence to go to the jury upon the question of whether Hicks killed Fox at the time and un-

der the circumstances alleged, but there was no evidence
whatsoever sufficient to sustain a verdict for the plaintiff
upon the theory that Hicks was the agent of the defend-
ant charged with the duty and authority by the defend-
ant of protecting that train, or any train, from tres-
passers attempting to steal rides or transportation there-
on.   Upon the other hand, the defendant called a witness
named R. S. Moore, who testified that he was the defend-
ant's special agent, with supervision over the territory
from Jacksonville to River Junction; that it was his busi-
ness to employ and discharge officers for that territory
covering the point near Marietta, a short distance from
Jacksonville, where Fox was killed; that the witness pre-
scribed the duties of persons employed by him; that he
employed Hicks in June, 1917, as watchman in West Jack-
sonville yards, his duties were to protect the merchandise
cars in the yard from being broken open and entered;
that the point near Marietta where Fox was killed is
about two and a half or three miles from the West Jack-
sonville yards; Hicks' authority ended at the west switch
in the West Jacksonville yards; the witness had never
given Hicks any orders to go to Marietta, nor employed
him to do so, nor was any one in Florida authorized to
employ him for the defendant to go there, nor did the wit-
ness know of Hicks' ever going there, nor did he ever
ratify such act.  Hicks was not a special officer of the
defendant, merely its watchman; he had no business for
the defendant or authority from it on the train; his du-
ties were at the west yards at night as watchman.  Hicks
had never been sent by the witness on that train, or out
on the road from Jacksonville, nor did he have any knowl-
edge of his ever having gone.   This watchman was in-
structed to carry a pistol, but to use it only in self-defense,
and when he discovered any one trying to break in a car

or to steal property, it was his duty to arrest such person and take him before an officer of the law. Hicks' hours as watchman in the yard was from six at night to six in the morning. Under cross-examination it was developed that Hicks had no right even to ride on the train by using his badge as watchman, but was required to show a pass every time he got on a train to ride anywhere, regardless of whether he was known or not, and he had no pass.

But the plaintiff in error contends that the plea of not guilty admits that Hicks was the agent of the defendant as alleged in the declaration. Counsel argue that while the plea "denies the doing of the act complained of," it "admits the capacity in which the party is alleged to have acted." If this statement means that the plea denies that the defendant committed the act complained of, but admits that it committed the act complained of through its agent, the plea of not guilty in such actions is of less significance than a "tinkling cymbal." The plea denies the wrongful act. Rule 71, Law Actions. The wrongful act was alleged to be the killing of Fox by the defendant acting through its agent. To assert that the plea does not deny the agency in such case is to affirm that it has no application when a corporation is defendant, because a corporation can act in no other way than through its agents. The case cited by counsel for plaintiff in error, Atlantic Coast Line R. Co. v. Coachman, 59 Fla. 130, 52 South. Rep. 377, is not in point. B. P. Coachman sued the railroad company for damage occasioned by the defendant in the negligent transportation of horses and mules belonging to the plaintiff. The consignee was S. S. Coachman, alleged to be plaintiff's agent. The plea of not guilty did not deny that statement because it denied merely the defendant's wrongful act, not that the plaintiff had no right to sue because not the real party in in-

terest. The case of Atlantic Coast Line R. Co. v. Partridge, 58 Fla. 153, 50 South. Rep. 634, is to the same point, holding that the plea of not guilty did not raise the question of the plaintiff's ownership of the property lost or damaged, such matters should be directly put in issue by special plea. The case of Gainesville & G. R. Co. v. Peck, 55 Fla. 402, 46 South. Rep. 1019, also holds that matter set up in a declaration showing plaintiff's right to *sue* is not denied by the general issue. So in the case at bar the plaintiff alleged that she was administratrix of the estate of Fox, the plea of not guilty did not deny that allegation of agency or representative capacity. The plea of not guilty does not deny the facts stated in the inducement. Rule 71, *supra*, "Inducement in pleading is the statement of matter which is introductory to the principal subject of the declaration or plea and which is necessary to explain or elucidate it." 2 Words and Phrases (2nd ed.) See also 22 Cyc. 498; 12 Stand. Ency. of Proc. 718. Abbott says: Inducement in form is usually somewhat like the preamble in an act or the recitals in a deed and commonly commences with the word whereas. In torts all that part of the declaration which precedes in logical order the statement of the act which is complained of as wrongful, comprising the allegation of the right or the circumstances of the right, is commonly known as the inducement. 1 Abbott's Law Dictionary, 601.

There was no evidence to show that the man Hicks was the agent of the defendant to protect the train from trespassers or the intrusion of trespassers upon it, or from stealing rides on it, nor that in shooting Fox he was acting within the scope of his authority as an employee, nor with the apparent scope of his authority. The theory of *respondeat superior* was the only one upon

which the declaration could be held to state a cause of action and it was wholly unsupported by the evidence. The court therefore correctly directed a verdict for the defendant, because the evidence would not have warranted a verdict for the plaintiff. See Mugge v. Jackson, 53 Fla. 323, 43 South. Rep. 91; Rogers Co. v. Meinhardt Bros., 37 Fla. 480, 19 South. Rep. 878; Sec. 1496, Gen. Stats. of Florida, 1906, Compiled Laws, 1914.

In this case actionable wrong could not be imputed to defendant under the evidence; the court therefore as a matter of law correctly determined the issue in favor of the defendant. See Southern Exp. Co. v. Williamson, 66 Fla. 286, 63 South. Rep. 433.

The judgment is therefore affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J., concur.