NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY v.
ALDEN HUCKINS

173 So. 696.
Opinion Filed March 24, 1937.
Rehearing Denied March 22, 1937.

*Knight, Adair, Cooper & Osborne,* and *J. Henson Markham,* for Petitioner;

*Fred B. Noble,* and *S. S. Blondheim,* for Respondent.

WHITFIELD, P. J.—In an action brought by Alden D. Huckins in the Civil Court of Record for Duval County, Florida, against the New England Mutual Life Insurance Company, to recover $100.00 disability insurance payments for two months under an insurance policy agreeing to make

such payments upon due proofs of the disability being made, the policy contains the following:

"If the insured * * * becomes physically or mentally incapacitated to such an extent as to be wholly and permanently unable to engage in any occupation or profession or to perform any work for compensation, gain or profit; * * * and after such disability has existed for ninety days, shall furnish due proof thereof to the Company, at its Home Office, the Company will waive the payment of any premium thereafter due upon this Policy during the continuance of such disability. Upon acceptance of such proof, and during the continuance of such disability, the Company will also pay to the Insured, An Income of Fifty Dollars a Month."

The declaration contains the following:

"That during the life of said policy, on to-wit, October 16th, A. D. 1931, the plaintiff was injured and, as a result thereof, became physically incapacitated to such an extent as to be wholly and permanently unable to engage in any occupation or profession, or to perform any work for compensation, gain or profit, which said disability existed for ninety (90) days and existed continuously from said date up to and including the date of the filing of this suit, whereby defendant was rendered liable under the terms and conditions of said insurance contract to pay the plaintiff the sum of Fifty Dollars ($50.00) per month; * * *."

Pleas of the defendant in effect aver that the plaintiff was not during the dates or at the times stated in the declaration physically incapacitated to such an extent as to be wholly and permanently unable to engage in any occupation or profession or to perform any work for compensation, gain or profit.

At the close of the plaintiff's testimony, the defendant moved for a directed verdict in its favor.

"The Court: * * * I think there is sufficient testimony to take the case to the jury on the question of the plaintiff being totally and permanently disabled. I don't think there is any indication so far that he has recovered so as to bring the case within that clause of the policy; and I shall deny the motion and note the exception of the defendant. * * *

"Thereupon the defendant, by its attorney, announced that it rested its case and renewed its motion for a directed verdict renewed at the conclusion of all the testimony.

"Thereupon the Court made its order on the defendant's motion for a directed verdict renewed at the conclusion of all the testimony and denied said motion, and exception to which ruling of the Court" was taken.

"Whereupon plaintiff by his attorneys, moved the Court for a directed verdict, * * * upon the following separate and several grounds:

" '(1)   That it affirmatively appears from the evidence that the plaintiff is permanently disabled so as to entitle him to the monthly payment provided for by the contract of the insurance sued upon.

" '(2)   That it affirmatively appears from the evidence that the plaintiff is disabled to such an extent as to be wholly and permanently unable to engage in any occupation or profession, or to perform any work for compensation, gain or profit, which he knows how to do, or from a consideration of his education, experience, age and natural ability, he is able to do.

" '(3)   On the ground that it affirmatively appears from the plaintiff's evidence that he is disabled to such an extent as to be wholly and permanently unable to substan-

tially engage in any occupation or profession, or to perform any work for compensation, gain or profit which he knows how to do, or from a consideration of his education, experience, age and natural ability, he is able to do.

" '(4)   On the ground that it affirmatively appears from the plaintiff's evidence that the plaintiff before attaining the age of sixty-five years, and while the policy of insurance sued upon remained in full force and effect, became physically incapacitated to such an extent as to be wholly and permanently unable to engage in any occupation or profession, or to perform any work for compensation, gain or profit.'

"And thereupon the Court announced that it would direct a verdict for the plaintiff and note exception of the defendant." ·

A motion for new trial was denied and judgment for the plaintiff was rendered upon the verdict directed by the Court.   The judgment was on appeal affirmed by the Circuit Court.   A writ of certiorari was issued by this court.

The evidence for the plaintiff was in accordance with the declaration and did not tend to prove the defense or to negative the case made by the plaintiff's pleadings and evidence.   The defendant offered no evidence.

If the evidence adduced for the plaintiff, being consistent, uncontradicted and unimpeached, is legally sufficient to sustain a verdict for the plaintiff, then the action of the trial court in directing a verdict for the plaintiff instead of submitting the cause to the jury and granting a new trial if the jury had found for the defendant, is not such a departure from the essential requirements of the law as to require this court to quash on certiorari the judgment that was rendered on the directed verdict and affirmed by the Circuit Court.   The Circuit Court had, on the appeal

taken to it, authority to review the evidence and to adjudicate its probative force, as the Circuit Court presumably did in affirming the judgment rendered by the civil court of record upon an express consideration of the evidence as adduced. See Section 4637 (2918) C. G. L.

Chapter 2096, Acts of 1877, contains the following:

"Upon the trial of all common law and criminal cases in the several Circuit Courts of this State, it shall be the duty of the Judge presiding on such trial to charge the jury only upon the law of the case; that is, upon some point or points of law or exceptions to evidence arising in the trial of said cause."

This provision in an amended form became the first paragraph of Section 1088 of the Revised Statutes of 1892. The following new matter was enacted as a separate paragraph of Section 1088, Revised Statutes of 1892:

"If, however, upon the conclusion of the argument of counsel in any civil case after all the evidence shall have been submitted, it be apparent to the judge of the circuit court, or county court that no evidence has been submitted upon which the jury could lawfully find a verdict for one party, the judgment may direct the jury to find a verdict for the opposite party."

The above mentioned two paragraphs of Section 1088, Revised Statutes of 1892, became Section 1496 (1088) of the General Statutes of 1906.

Chapter 622, Acts of 1911, amended Section 1496 of the General Statutes of 1906 so as to read:

"Section 1496. Duty of Judge to Charge Jury.—Upon the trial of all cases at law in the several courts of this State, the Judge presiding on such trial shall charge the jury only upon the law of the case; that is, upon some point or points of law arising in the trial of said cause. If, how-

ever, after all the evidence shall have been submitted on behalf of the plaintiff in any civil case, it be apparent to the Judge of the Circuit Court, County Court or Court of Record that no evidence has been submitted upon which the jury could lawfully find a verdict for the plaintiff, the Judge may then direct the jury to find a verdict for the defendant; and if, after all the evidence of all the parties shall have been submitted, it be apparent to the Judge of the Circuit Court or County Court or Court of Record that no sufficient evidence has been submitted upon which the jury could legally find a verdict for one party, the Judge may direct the jury to find a verdict for the opposite party."

The last quoted provision became Section 2696 (1496) of the Revised General Statutes of 1920.

Chapter 9364, Acts of 1923, amended Section 2696 (1496) of the Revised General Statutes of 1920 so as to read:

"2696 (1496). Judge to Charge Jury on Law case: Direction of Verdict.—Upon the trial of all cases at law in the several courts of this State, the judge presiding on such trial shall charge the jury only upon the law of the case; that is, upon some point or points of law arising in the trial of said cause. If, however, after all the evidence shall have been submitted on behalf of the plaintiff in any civil case, or upon behalf of the state in any criminal case, it be apparent to the Judge of the Circuit Court, Criminal Court, County Court of Record that no evidence has been submitted upon which the jury could lawfully find a verdict for the plaintiff in such civil case, or a verdict against the defendant in any criminal case, the judge shall upon motion of the defendant direct the jury to find a verdict for the defendant; and if, after all the evidence of the parties shall have been submitted, it be apparent to the

judge of the Circuit Court or County Court or Court of Record that no sufficient evidence has been submitted upon which the jury could legally find a verdict for one party, the judge may direct the jury to find a verdict for the opposite party, provided, that no verdict shall ever be directed for the State in any criminal case."

Chapter 10163, Acts of 1925, amended the Act of 1923 so as to make its provisions also applicable to Civil Courts of Record.

The Act of 1925 is now Section 4363 (2696) C. G. L., which contains the following:

"Upon the trial of all cases at law in the several courts of this State, the judge presiding on such trial shall charge the jury only upon the law of the case; that is, upon some point or points of law arising in the trial of said cause. If, however, after all the evidence shall have been submitted on behalf of the plaintiff in any civil case, or upon behalf of the State in any criminal case, it be apparent to the judge of the Circuit court, criminal court, county court, or civil court of record that no evidence has been submitted upon which the jury could lawfully find a verdict against the defendant in any criminal case, the judge shall upon motion of the defendant direct the jury to find a verdict for the defendant; * * *"

Under the statute, when appropriate issues are duly made for trial by jury upon sufficient pleadings, and the evidence properly adduced under the issues as made is conflicting, and different inferences may reasonably be drawn from such evidence leading to opposing conclusions or determinations, the court should not direct a verdict for either party, but should submit the cause to the jury with appropriate instructions. Rogers Co. v. Meinhardt, 37 Fla. 480, 19 So. 878; F. C. & P. v. Williams, 37 Fla. 406, 20 So.

588. But where the evidence considered as an entirety fails to prove the plaintiff's case under the issues as duly made, the court may direct a verdict for the defendant. Bruner v. Hart, 59 Fla. 171, 51 So. 593; Gravette v. Turner, 77 Fla. 311, 81 So. 476. And where the evidence fully makes out the plaintiff's case, and there is no evidence to contradict or rebut it, a peremptory charge for a verdict in the plaintiff's favor is proper. Tedder v. Fraleigh-Lines-Smith Co., 55 Fla. 496, 46 So. 419; Investment Co. v. Trueman, 63 Fla. 184, 57 So. 663, Bland v. Fidelity Trust Co., 71 Fla. 499, 71 So. 630; Standard Accident Ins. Co. v. Com. Bank & Trust Co., 93 Fla. 903, 112 So. 615; Bolles v. Carson, 73 Fla. 504, 512, 74 So. 509; Berryhill-Cromartie Co. v. Manitowoc Shipbuilding & Dry Dock Co., 66 Fla. 170, 63 So. 720; Gordon v. Lowe, 64 Fla. 81, 59 So. 861; McGill v. Dartist, 69 Fla. 587, 68 So. 755; Greenblatt v. Bissell Dry Goods Co., 85 Fla. 83, 95 So. 302; Ocala Iron Works v. Crosby, 61 Fla. 369, 54 So. 815; Am. Mercantile Co. v. Circular Advertising Co., 71 Fla. 522, 71 So. 607. See also Hendrick v. Lindsay, 93 U. S. 143, 23 L. Ed. 855; Small Co. v. Lamborn & Co., 267 U. S. 248, 45 Sup. Ct. 300, 69 L. Ed. 597.

In A. C. L. Ry. Co. v. Webb, 112 Fla. 449, 150 So. 741, contributory negligence of the plaintiff's decedent appeared from the testimony *for the plaintiff executrix,* and the directed verdict for the plaintiff was error because of its connection with erroneous instructions affecting liability of the defendant railroad company under the statutes of the state, though the plaintiff's decedent was also negligent.

In Jones v. Gen. Acc. Fire & Life Ass. Corp., 103 Fla. 787, 137 So. 889, there was conflicting evidence which made a directed verdict for the defendant improper. Gunn v. City of Jacksonville, 67 Fla. 40, 64 So. 435.

The ultimate question to be determined is whether the action of the Civil Court of Record in directing a verdict for the plaintiff violated the essential requirements of the law so as to require this Court on certiorari to quash the judgment for the plaintiff rendered by the trial court on the directed verdict and affirmed by the Circuit Court on appeal to that court. There being no attack upon the pleadings, the sufficiency of the evidence to justify a verdict for the plaintiff is to be determined.

"In determining whether error was committed in directing a verdict due consideration should be given to the organic right of trial by jury. Otherwise fundamental principles may be subordinated to procedure or convenience." Anderson v. Sou. Cotton Oil Co., 73 Fla. 432, t. 435, 74 So. 975.

"A party in moving for a directed verdict, admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence." Gunn v. City of Jacksonville, 67 Fla. 40, 64 So. 435.

"A motion by each party for a directed verdict, without more, does not waive a jury and authorize the Court to decide a controverted question of fact, as a matter of law, or render a general verdict on the facts, as a matter of law, where otherwise the case would be for the jury." Gatlett v. Chestnut, 107 Fla. 498, t. 510, 146 So. 241. As used in the insurance policy here sued on, the words, "if the insured * * * becomes physically or mentally incapacitated to such an extent as to be wholly and permanently unable to engage in any occupation or profession or to perform any work for compensation, gain or profit," do not in legal contemplation mean a state of helplessness or of inability or incapacity to do any part whatever of an occupation or pro-

·fession, or to perform any work whatever for compensation, gain or profit; but the incapacity contemplated means incapacity or inability to the extent of being wholly and permanently unable to do substantially all of the material acts that are usually required to be performed in the occupation or work in which the insured is engaged or in which he may engage within the contemplation of the particular insurance policy, in substantially the customary or usual manner. Each case must be determined upon a just con·sideration of the pertinent facts and the provisions of the particular insurance policy, the latter being considered in the light of the intent of the parties under the intendments of the law that the insurance policy shall afford the protection when it can legally and fairly be done.

The plaintiff is a farmer. This is shown by the application for the insurance policy. He had a high school education. Before his injury he did much of his farm work himself. He was healthy and active before the injury, and was forty-three years old at the trial.

The injury to plaintiff was caused by an accidental gunshot wound. A small calibre bullet entered the right side of the right thigh, crossed the abdomen and entered the left thigh, injuring the blood vessels of the left thigh so that "there is not any chance of that leg healing so that he can have anywhere near a normal use of it." "It is a permanent disability." "He is not able to do the normal work of a farmer." And as testified by a physician who attended the plaintiff after his injury, "There is very definite damage to the femoral nerve. To the lower part of the leg it is almost a complete loss of the femoral nerve, because the foot drop and the atrophy now, the smallness of the leg." He can perform some service about the farm in giving directions to others and in light manual assistance that does

not require the active use of his left leg which is permanently injured and makes plaintiff incapacitated for ordinary farm work.

The testimony indicates that the plaintiff is not helpless but that he is permanently incapacitated from doing the work on the farm that he formerly did, and that because of the major permanent injury and consequent ailments and continuous pains, he is physically incapacitated to such an extent as to be wholly and permanently unable to engage in any occupation or profession, or to perform any work for compensation, gain or profit, within the meaning of the policy contract. See Equitable Life Assurance Society of the U. S. v. Wiggins, 115 Fla. 136, 155 So. 327; Equitable Life Assurance Society of the U. S. V. McKeithan, 119 Fla. 486, 160 So. 883. See also Hagman v. Equitable Life Assurance Society, 214 Ky. 56, 282, S. W. 1112; John Hancock Mut. L. Ins. Co. v. Cave, 240 Ky. 56, 40 S. W. (2d) 1004, 79 A. L. R. 848.

In the later case of Davis v. New England Mutual Life Insurance Co. of Boston, Mass., 263 Ky. 568, 92 S. W. (2nd) 822, the difference in the essential facts required a different result. See also United States v. Jones, 73 Fed. (2d) 376.

As the evidence clearly sustains a verdict for the plaintiff and as such verdict has been approved by the appellate court in affirming the judgment, the fact that the verdict was directed by the trial court does not require this court on certiorari to quash the judgment, when the defendant offered no evidence and the evidence adduced by the plaintiff is consistent with the allegations of the declaration does not tend to prove the asserted defense, and is ample to support the verdict that has been the sanction of the trial court and of the circuit court on appeal.

Writ of certiorari quashed.

ELLIS, C. J., and TERRELL, BROWN, BUFORD, and DAVIS, J. J., concur.

BROWN, J. (concurring).—If this case were before us on direct appeal from the trial court, I would be inclined to hold that the case should have been submitted to the jury under the principles laid down in the cases cited in the foregoing opinion, and also in the case of Gravette v. Turner, 77 Fla. 311, 81 So. 476. However, the question is a close one on this evidence, and I hardly think we would be justified in quashing the judgment of the Circuit Court, which in this instance was the appellate court.