**Edgar W. STOKES, Appellant,**

v.

**CONTINENTAL ASSURANCE COM-
PANY, Appellee.**

No. 16238.

United States Court of Appeals
Fifth Circuit.

April 3, 1957.

Rehearing Denied July 3, 1957.

———◇———

Thomas H. Anderson, Miami, Fla.,
Anderson & Nadeau, Miami, Fla., for
appellant.

Wesley G. Carey, Miami, Fla., Carey
& Papy, Miami, Fla., for appellee.

Before TUTTLE, JONES and
BROWN, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from a judgment
based on a jury verdict in the trial court
in favor of the defendant insurance com-
pany in a disability case. The record
is silent as to any motion for directed
verdict for appellant and as to any ob-
jection to the charge of the court as
to alleged errors here raised for the
first time.

The plaintiff alleged that he was a
physician who had been living in Louis-
ville, Kentucky, where he had operated
a sanitarium for alcoholics, drug addicts,
nervous patients and mental patients
for 27 years; that he sold the sanitarium
in 1950 and gave up his operation of it
in 1951; in February 1952 he was en
route to Florida, in which state he had
learned that "there would be a position
available in mental hygiene," and near
Clewiston he had an automobile acci-
dent which he alleged caused him in-
juries that kept him in the hospital for
five or six days after he had continued
to Fort Lauderdale. There were no frac-
tures and no permanent injuries except,
as stated in his brief, over the next few
months he "displayed symptoms of head-
ache, nervousness, was exhausted, had
a ringing in his ears." He testified that
these symptoms "have persisted more or
less to the present time" and that when
he is under strain he cannot sleep and
he is forgetful.

The testimony on behalf of plaintiff
supported these allegations and medical
witnesses gave the opinion that he was
occupationally disabled. These opinions
were in large part based on subjective
symptoms and on the patient's history
as related by him. All physical tests,
including those of the brain and nervous
system, were normal. On cross-exam-
ination the witnesses qualified somewhat
their views as to the extent of disability,
althoughi it is quite clear that there was
sufficient evidence on behalf of the plain-
tiff for the jury to have found in his
favor. Medical witnesses for the de-

fendant testified as to the normality of all tests made as to brain and nervous system as well as the heart. The plaintiff himself testified at length as to his nervousness and irritability. He was therefore under constant observation by the jury both while on the witness stand and at the counsel table during the trial. In light of the fact that nearly all of the symptoms which plaintiff relied on to show his disability were subjective, that is, those related by him, and in view of his own participation in the trial and the fact that there was no proof of any effort by plaintiff to test his ability to engage in any business activity either within his medical field from which he had retired or as a mental hygienist, Mutual Life Ins. Co. of New York v. Ellison, 5 Cir., 223 F.2d 686, we could hardly say, even if the point had been properly raised, that a jury verdict for the plaintiff was demanded.

■ Here, however, the sufficiency of the evidence to sustain the jury's verdict is not before us. Upon the conclusion of the entire case the defendant, and the defendant alone, moved for a directed verdict. The plaintiff was content to let the case go to the jury. We have repeatedly held that in such circumstances the question of sufficiency of the evidence to support a verdict for the defendant is foreclosed.

"We find that no motion by any appellant was made in the trial for an instructed verdict, so that no question of the sufficiency of the evidence has been properly raised; * * *". Baten v. Kirby Lumber Corp., 5 Cir., 103 F.2d 272, 273.

In Boudreaux v. Mississippi Shipping Co., Inc., 5 Cir., 222 F.2d 954, we said:

"(1) Appellee, insisting that the jury's verdict is amply supported on the record, points out that there was no motion for a directed verdict, nor any objection to the giving or the failure to give an instruction. So pointing it urges upon us that the assigned error presents nothing for our consideration under the plain provisions of Rule 50(b) and Rule 51 of the Federal Rules of Civil Procedure, 28 U.S.C.A., and the authorities construing and applying them. We agree that this is so.

"(2) This court has never departed from but has consistently reaffirmed the rule governing in cases of this kind, as laid down in Baten v. Kirby Lumber Corp., 5 Cir., 103 F.2d 272, 274:

" 'Whether the verdict is authorized by the evidence is a question not reserved in the trial. The defendants went to the jury without challenging its sufficiency, and no error can be attributed to the judge thereabout. Federal appellate courts do not directly review jury verdicts but only rulings of the judge which may have affected the verdict. Rule of Civil Procedure 50, 28 U.S.C.A., following section 723c, does not do away with but emphasizes the necessity of a motion for a directed verdict to raise the legal question whether the evidence is sufficient.' "

The reason for this rule makes clear that it is no mere technicality. If a party believes that his opponent has failed to produce the sufficiency of evidence that will support a verdict in his favor, he can choose either to ask the court to direct a verdict in his favor or he can take his chances with the jury. It is something of a gamble with him. If the court directs a verdict in his favor and this action is later reversed, he must face a new trial. He may therefore, in a doubtful case, prefer to leave his case up to the jury, as he did here. Having done so, and having lost before the jury, he cannot be heard later to say that the trial judge should be put in error for having submitted the matter to the jury in the first place. As has been so succinctly stated by Judge Sibley, under the circumstances of this case, "no error can be attributed to the [trial court] thereabout." Baten

v. Kirby Lumber Co., supra, 103 F.2d at page 274.

The same bar exists to our considering the remaining contentions of appellant. The policy here in question does not have the usual language of disability policies such as "wholly * * * unable to engage in any occupation or profession or to perform any work for compensation, gain or profit," the language before the Florida court in New England Mutual Life Ins. Co. v. Huckins, 127 Fla. 540, 173 So. 696, 700, or "impossible for the Insured to follow a gainful occupation," the language considered by us in the Florida case of Mutual Life Ins. Co. of New York v. Ellison, 5 Cir., 223 F.2d 686, 687. The language in the present policy is "If the insured is disabled by bodily injury or by sickness so as to suffer a total loss of all of his business time * * *."

In his printed brief and in his reply brief appellant does not directly and categorically urge that this language merits a different construction from that given to the more usual language first quoted above. He implies that the language does place upon the insurance company the burden of showing that the insured is able to perform duties of some other business or activity once it is shown that he is unable to perform the usual and customary acts in connection with the practice of medicine, his occupation at the time the policy was issued.

First, as to the construction of the language itself. It may be that if the Florida courts were asked to decide that the language here used required only a showing that plaintiff was disabled from carrying on the duties of a physician to permit him to recover they might so hold. The plaintiff here, however, avoided making such a contention in the trial court and in his written briefs here. Only in oral argument did counsel take this unequivocal position. It may be that the reason he did not request a charge to that effect by the trial court (which he did not) is that it was plain from plaintiff's own testimony that before the injuries or sickness complained of he had already abandoned, or retired from, the practice of medicine, and had gone to a state where he could not continue to do so.[1]

Be that as it may the appellant did not request a jury charge embodying his concept of the proper construction of "loss of all of his business time." Moreover his counsel actively participated in the framing of the charge of the court that was given and of which he now complains. This charge was:

"The language of the policy dealing with disability does not in legal contemplation mean a state of helplessness or of inability or incapacity to do any part whatever of an occupation or profession, or to perform any work whatever for compensation, gain or profit, but the disability contemplated means disability or inability to the extent of being wholly or [sic] permanently unable to do substantially all of the material acts that are usually required to be performed in the occupation or profession or work in which the insured is engaged, or in which he might have engaged within the contemplation of the particular insurance policy."[2]

The trial court held extended discussion with counsel during the trial in the absence of the jury in an effort to iron out all difficulties as to the charge on this point. The court announced that it would charge the jury as follows, defining "business time":

"* * * I charge you that 'business time' in a policy insuring

---

1. Appellant's brief states that he had learned that there would be a position available in "mental hygiene" in Fort Lauderdale; that "this appears to be a field of medicine which apparently does not require the participant to be examined under state laws."

2. The use of the word "or" between "wholly" and "permanently" is clearly inappropriate. We do not know whether it is a misprint or inadvertence, but neither party here complains of it.

against loss of business time caused by accident or injury or sickness refers to time loss from the occupation in which the insured was engaged at the time the disability was sustained, or the time lost from some other occupation in which the insured might have been able to have been engaged within the range of his normal ability, taking into consideration his education, training and work, and his physical and mental condition. If the insured becomes physically or mentally incapacitated to such an extent as to be wholly unable to engage, so as to suffer total loss of business time. The language of the Policy involved in this case reads that payment shall be made if the insured suffers a total loss of business time."

No objection or exception was taken to this proposed charge by plaintiff's counsel, and no complaint is made of it here. The court then went on to read the paragraph defining disability quoted above, to which one of appellant's counsel said "The word 'permanently' was in there, and I don't think it should be." No objection was made to the definition of disability.

Thereafter the court gave the charges just as he had read them to counsel and then asked "Have there been any instructions, counsel, that you have noted that we passed over?" Thereupon Mr. Sams, counsel for appellant, stated: "I think that covers it Judge."

We cannot assume that trial counsel overlooked the possibility that appellant might have succeeded in obtaining a more restrictive charge from the court as to the meaning of "loss of all of his business time" than that it meant substantially the same as "wholly * * * unable to engage in any occupation, etc." We do, however, recognize that such a request if made might have rendered the plaintiff's verdict, if won, vulnerable to attack on appeal. Counsel was required, therefore, to elect whether to put the case to the jury on the law as announced or to risk a reversal on appeal for an incorrect charge. Having made the election he is bound by it. Even though we assume that the Florida courts might construe the language in this policy as requiring only a showing that plaintiff was disabled from practicing medicine, the plaintiff, for reasons best known to himself, preferred not to insist on this definition. That is why this court adheres to the rule of the Boudreaux case, supra, and doubtless why the Supreme Court said in Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 483, 87 L.Ed. 645; "In fairness to the trial court and to the parties, objections to a charge must be sufficiently specific to bring into focus the precise nature of the alleged error."

Counsel for appellant, in oral argument, urged that we here have an exception to the general rule, and that we should note obvious error to prevent manifest injustice. A simple answer to this contention is that our reading of the record convinces us that if the court misconstrued the Florida law it is not an obvious error for counsel never pointed it out in the extended discussion over the charge and counsel does not cite any Florida cases to support his position here. In fact he relies on the language of the Florida Supreme Court in New England Mutual Life Ins. Co. v. Huckins, supra, a case in which the normal type of disability clause was before the court. Moreover our reading of the record fails to convince us that an affirmance of the judgment of the trial court would result in manifest injustice.

The judgment is affirmed.