BARKDULL, Chief Judge.
The appellants, defendants in the trial court, appeal an adverse final judgment in a personal injury action and have preserved two points for review by this court: (1) The propriety of the direction of a verdict of liability; (2) The permitting into evidence of testimony of an investigating police officer as to the point of impact between the two vehicles.
As to the first point, we find that the trial judge erred in directing a verdict of liability at the conclusion of all the evidence and submitting the matter to the jury solely for the determination of damage. In reaching a conclusion on whether a matter should be submitted to a jury to resolve the issues, it is incumbent upon a trial judge to determine [at this moment in the trial proceedings] whether the evidence before him is susceptible to two or more inconsistent views, [see: Williams v. Sauls, 151 Fla. 270, 9 So.2d 369; Cadore v. Karp, Fla. 1957, 91 So.2d 806] and, if not, to direct a verdict in favor of one or the other of the parties. See: Okeechobee Company for Use and Benefit of Hamrick v. Norton, 149 Fla. 651, 6 So.2d 632; McAllister v. Miami Daily News, 154 Fla. 370, 17 So.2d 613. Of course, in determining a motion for a directed verdict, all inferences are resolved in favor of the party moved against. See: Massaline v. Rich, Fla.App.1962, 137 So.2d 10; Guhman v. Florida Power & Light Company, Fla.App.1962, 139 So.2d 749.
The accident in the instant case involved a southbound automobile in which the plaintiffs were riding, and a northbound tractor driven by the individual defendant. There was evidence to support the plaintiffs’ view that in attempting to pass vehicles ahead, the northbound tractor deliberately pulled into the southbound lane and struck the vehicle in which the plaintiffs were riding. There was also evidence adduced to support the defendant-driver’s contention that because of the entry into the *709 highway of a third vehicle unexpectedly into the path of the tractor, the driver was placed in a sudden emergency position and, in attempting to extricate himself from such a situation caused by the third vehicle, the accident occurred. If the jury should determine that the collision occurred because of an emergency situation created by a stranger, a verdict for the defendant would be in accordance with the applicable principles of law. See: Klepper v. Breslin, Fla.1955, 83 So.2d 587; Dupree v. Pitts, Fla.App.1964, 159 So.2d 904; 23 Fla.Jur., Negligence, § 81. Therefore, the evidence before the trial judge at the time of the consideration of the motion for directed verdict was susceptible to two views and, therefore, the issue of liability should have been submitted to the jury.
If the evidence was only as contended by the plaintiffs, they would be entitled to a directed verdict. See: New England Mutual Life Insurance Co. v. Huckins, 127 Fla. 540, 173 So. 696; Garris v. Robeison, Fla.App.1962, 146 So.2d 388. However, there was a direct conflict in the testimony between the driver of the plaintiff’s automobile [1] and the defendant truck driver.[2]
As to the second point [on the propriety of permitting the investigating officer to recreate the scene of the accident] it appears that no timely objections to the investigating officer were made at the appropriate time in the trial proceedings and, if this was the only error urged in the record, it would be no more than harmless. However, because the matter will be retried, we indicate to the trial court that the propriety of the testimony of an investigating officer should be controlled by the principles enunciated in Ippolito v. Brener, Fla.1956, 89 So.2d 650; Mills v. Redwing Carriers, Inc., Fla.App.1961, 127 So.2d 453.
Therefore, for the reasons stated above, the final judgment here under review is reversed, and the matter remanded for a new trial.
Reversed and remanded, with directions.

. Testimony of plaintiff-driver, Alexander McCakon:
* * * ⅜ *
“Q Now, would you tell the Court and the jury in your own words, sir, what happened and start with the first indication that you had as you were going along there that something was going to occur?
“A Well, we were coming down 301, and there was five or six cars coming towards us; and in back of them was this tractor, and as we approached the tractor, it was rapidly catching up on the last car; and I suddenly realized that he was going to either hit the car in front of him, and I started to put my brakes on to slow down thinking that he would come sideways, but instead he swerved hitting me; and I tried to swerve to my right, and the next thing I remember was the side of the tractor coming into the car; and I don't remember anything else until I was taken out of the car.”
⅜ ⅝ ⅜ ⅜ ⅜

. Testimony of defendant-driver, Ferrin Hugh Grimes:
⅝* ⅜ * ⅝ ⅞
“Q Now, describe to the jury just how this accident happened.
“A As I was proceeding north on 301, and I was coming up to the — it would be a side road to my right — I saw a car coming across this construction — constructed line over there from my right.
I saw the car coming across it. I assumed that he was going to stop whenever he pulled up to the line of traffic, but he didn’t, and he made a sudden dash right out in front of me.
”Q What did you do then?
“A Then I applied the brakes and tried to the best of my ability to keep the vehicle under control as much as I possibly could, and under the condition of a. tractor that way, the back ends of them are extremely light.
“Q When it is not loaded?
“A When it is not loaded. In other words, in the bobtail condition in which I was traveling, and they will not skid in> a perfectly straight line, whenever they hit, they are subject to bounce one way or the other. In my desperation to try to keep from hitting this car that had' run in front of me somewhere along the line, I made contact with the car that was coming southbound.”