BESSIE JOHNSON BY HER NEXT FRIEND DAVID JOHNSON, *Plaintiff in Error,* v. LOUISVILLE & NASHVILLE RAILROAD COMPANY, *Defendant in Error.*

1. If no evidence is adduced at the trial of a civil action upon which a verdict for the plaintiff may be lawfully predicated, the court may direct a verdict for the defendant. Or if a fair consideration of the whole evidence, or the application of controlling provisions or principles of law to the evidence adduced at the trial of a civil action, precludes a verdict for the plaintiff, the court may direct a verdict for the defendant.

2. The court should not direct a verdict for the defendant unless it is clear that there is no evidence whatever adduced that could in law support a verdict for plaintiff. If the evidence is conflicting, or will admit of different reasonable inferences, or if there is evidence *tending* to prove the issue, the case should be submitted to the jury for their finding of fact on the evidence, and not taken from them and passed upon by the court as a question of law.

3. The court should not direct a verdict for one party unless the evidence is such that no view which the jury may lawfully take of it favorable to the other party can be sustained. The power of the court to direct a verdict on the evidence should be cautiously exercised.

4. Where injury by the running of a railroad company's locomotive is established, the statute places the burden upon the railroad company to "make it appear that their agents  * exercised all ordinary and reasonable care and diligence" to prevent the injury; and the statute also provides that "if the

20—Vol. 59.

complainant and the agents of the company are both at fault, the former may recover, but the damage shall be diminished or increased by the jury in proportion to the amount of default attributed to him."

5. Where there is testimony from which the jury could lawfully infer at least some negligence on the part of the fireman of a railroad locomotive in notifying the engineer that the person injured was approaching the track with an apparent purpose to cross ahead of the train, a peremptory charge for the defendant should not have been given.

This case was decided by Division A.

Writ of error to the Circuit Court for Escambia County.

The facts in the case are stated in the opinion of the court.

*Reeves & Watson,* for Plaintiff in Error;

*Blount & Blount & Carter,* for Defendant in Error.

WHITFIELD, C. J.—In an action in two counts for damages for personal injuries alleged to have been received by the plaintiff by reason of the negligent operation of the defendant's train, and also by the negligence of the defendant company in not having a reasonably safe approach to its depot by reason of which the plaintiff stumbled and fell on the track and was injured by the negligent and careless running of defendant's engine and train of cars, the court directed a verdict for the defendant and the plaintiff took writ of error.

In section 1496 of the General Statutes of 1906 it is provided that if "upon the conclusion of the argument of counsel in any civil case, after all the evidence shall have

been submitted, it be apparent to the Judge of the Circuit Court, or County Court, that no evidence has been submitted upon which the jury could lawfully find a verdict for one party, the judge may direct the jury to find a verdict for the opposite party." If no evidence is adduced at the trial of a civil action upon which a verdict for the plaintiff may be lawfully predicated, the court may direct a verdict for the defendant. Or if a fair consideration of the whole evidence, or the application of controlling provisions or principles of law to the evidence adduced at the trial of a civil action, precludes a verdict for the plaintiff, the court may direct a verdict for the defendant. Errors committed in admitting or excluding proffered evidence are remedied by appropriate procedure under controlling rules of law. Bass v. Ramos, 58 Fla., 161, 50 South. Rep. 945; Bruner v. Hart, 59 Fla. 171, 51 South. Rep. 593; Wade v. Louisville & N. R. Co., 54 Fla. 277, 45 South. Rep. 472; Painter Fertilizer Co. v. DuPont, 54 Fla. 288, 45 South. Rep. 507; Pensacola Bank & Trust Co. v. National Bank of St. Petersburg, decided this term.

The court should not direct a verdict for the defendant unless it is *clear* that there is no evidence whatever adduced that could in law support a verdict for plaintiff. If the evidence is conflicting, or will admit of different reasonable inferences, or if there is evidence *tending* to prove the issue, the case should be submitted to the jury for their finding of fact on the evidence, and not taken from them and passed upon by the court as a question of law. Florida Cent. & P. R. Co. v. Williams, 37 Fla. 406, 20 South. Rep. 558; German-American Lumber Co. v. Brock, 55 Fla. 577, 46 South. Rep. 740; McKinnon v. Johnson, 57 Fla. 120, 48 South. Rep. 910.

The court should not direct a verdict for one party unless the evidence is such that no view which the jury

may lawfully take of it favorable to the other party can be sustained. The power of the court to direct a verdict on the evidence should be cautiously exercised. C. B. Rogers Co. v. Meinhardt, 37 Fla. 480, 19 South. Rep. 878.

Sections 3148 and 3149 of the General Statutes of 1906, are as follows:

"3148.   Liability of railroad company.—A railroad company shall be liable for any damage done to persons, stock or other property, by the running of the locomotives, or cars, or other machinery of such company, or for damage done by any person in the employ and service of such company, unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company."

"3149.   When recovery of damages forbidden.—No person shall recover damages from a railroad company for injury to himself or his property where the same is done by his consent, or is caused by his own negligence. If the complainant and the agents of the company are both at fault, the former may recover, but the damages shall be diminished or increased by the jury in proportion to the amount of default attributable to him."

The injury by the running of defendant's locomotive being established, it was by the terms of the statute encumbent upon the railroad company to "make it appear that their agents  *  exercised all ordinary and reasonable care and diligence" to prevent the injury; and "if the complainants and the agents of the company are both at fault, the former may recover, but the damages shall be diminished or increased by the jury in proportion to the amount of default attributable to him."

The plaintiff testified that she was eighteen years old and was run over by a train of defendant and both her feet were injured; one foot had to be amputated because

of the injury; that carrying a suit case, a cloak and a purse or hand bag, she endeavored to cross defendant's track at a station just ahead of an approaching train; that "I could have crossed the track before the train passed, if I had not fallen;" that where she fell the soil, or slag or rock was loose, it would shift, it caused her to fall; that "the heel of my shoe stepped on it and the heel was rather high and it turned and caused me to fall;" that she was a little late and was running when she fell. One of the defendant's witnesses testified that he was fireman on the engine "when the engine struck" plaintiff; that when the train was "going into Brent station about making a stop, I saw a lady coming out near the track running as though she wanted to cross and. I told" the engineer "somebody wanted to cross, he had. better stop as quick as he could;" that he first saw her about forty feet from the track; that he called the engineer's "attention to it when she was about twenty feet from where she was going to cross;" that the engineer already had the brakes on, and "he put on the emergency—reversing the engine;" that "I told him to stop when she was in twenty feet of the track and then is when he applied the brakes. She was then about forty feet from where she was going to cross;" that "I was about eighty feet or two car lengths up the track when I first saw the young lady come out the gate." "It was about forty feet from the gate to the track." "When she came up with the grips in her hand, I knew she was going to try to cross to get to the depot. I knew she did not have time to cross and supposed she would stop. I did not call the engineer's attention until she was in about twenty feet of the track." The engineer in the main corroborated the testimony of the fireman, and himself testified that he was approaching the station with the train under full control to stop, and that he did everything possible to avoid the

accident when his attention was called to the approach of the lady to the track, he being on the opposite side of the engine and could not see the lady approaching.

There is testimony that the gate through which plaintiff passed was fifty feet from the track, and that when the plaintiff came out of the gate running towards the station, at which point the fireman says he saw her, the train was four hundred feet or more from the station, and that the train was not stopped as quickly as it should have been. For the purposes of this decision, it is perhaps not necessary to state more of the evidence at length.

From the evidence, it appears that the fireman saw the lady forty or fifty feet from the track and knew from the articles she carried and her conduct in running towards the depot on the opposite side of the track, that she intended to cross the track ahead of the train to reach the depot in time to become a passenger on that train, yet he did not call the attention of the engineer to the lady, until she was within twenty feet of the track. Whether, if the fireman had called the attention of the engineer to the lady's approach as soon as he saw her forty or fifty feet away and knew her intention to cross the track, the train could have been stopped before it reached the place where the accident occurred, or whether the speed would have been lessened so that she could have gotten off the track before the train reached her, cannot be determined on this record. The testimony of the fireman tends to show at least some negligence on his part in failing to promptly notify the engineer of the lady's approach and her apparent intention to cross the track ahead of the engine. Conceding that the plaintiff's own testimony shows negligence on her part, as there was some evidence tending to show negligence in the fireman, the case should have been submitted to the jury to determine the lia-

bility of the defendant, if any, and if damages are allowed, to diminish them "in proportion to the amount of default attributable to" the plaintiff.

The facts of this case calling for the exercise of all ordinary and reasonable care and diligence of the fireman and engineer, are essentially different from those in Seaboard Air Line R. Co. v. Barwick, 51 Fla. 309, 41 South. Rep. 70, where the plaintiff on a dark night stepped on the track within three feet of an approaching engine and train of cars that she knew to be present and approaching, and the evidence showed without contradiction that the servants of the defendant company were guilty of no negligence that in any way contributed to the injury, and that the injury resulted solely from the plaintiff's own negligence. The facts here are also materially different from those in Atlantic Coast Line R. Co. v. Miller, 53 Fla. 246, 44 South. Rep. 247, where the engineer and fireman, though keeping a careful lookout ahead of the engine, did not see the injured person approaching the track until the engine was within less than seventy-five yards of the crossing, when the engineer and fireman saw the party drive his horse and buggy upon the track, it then being too late to stop the train. The evidence here is conflicting in some particulars, but there is testimony that when the engine was four hundred feet of more from the place of the injury, the plaintiff came out of a gate forty or more feet from the track, that the fireman then saw her and from the articles she was carrying and from her running he inferred that she was endeavoring to cross the track at the station ahead of the train to reach the depot for the purpose of becoming a passenger on that train, at a time when the train should have been under full control to stop at that depot, that the fireman did not warn the engineer of the plaintiff's approach until she was only twenty feet from the track, notwith-

standing he saw her forty or more feet from the track and knew she intended to cross the track ahead of the train. Under these conditions, and conceding the negligence of the plaintiff, it cannot be fairly said there is no evidence whatever tending to show negligence in the fireman that contributed proximately to the injury, and therefore the evidence should have been submitted to the jury for their finding as contemplated by the statutes above quoted.

The judgment is reversed and the cause is remanded for further proceedings.

SHACKLEFORD and COCKRELL, J. J., concur;

TAYLOR, HOCKER and PARKHILL, J. J., concur in the opinion.