WILSON STALNAKER, NATHAN PRAYTHER, and J. T. HAMMOCK, SR., v. STATE.

183 So. 294.
Opinion Filed July 28, 1938.
Rehearing Denied September 30, 1938.

*Martin & Martin,* for Plaintiffs in Error;

*George Couper Gibbs,* Attorney General, and *Tyrus A. Norwood,* Assistant Attorney General, for the State.

CHAPMAN, J.—On September 16, 1936, a Grand Jury of Hamilton County, Florida, presented an indictment against

Wilson Stalnaker, Nathan Prayther, and J. T. Hammock, Sr., in three separate counts for the killing of W. C. Harris in Hamilton County, Florida, on the 28th day of July, 1936. The first count of the indictment charged Wilson Stalnaker, J. T. Hammock, Sr., and Nathan Prayther with murder in the first degree of W. C. Harris. The second count of the indictment charged Wilson Stalnaker and J. T. Hammock, Sr., murder in the first degree of W. C. Harris, and Nathan Prayther as an accessory before the fact. The third count of the indictment charged Wilson Stalnaker and Nathan Prayther with murder in the first degree of W. C. Harris, and J. T. Hammock, Sr., as an accessory before the fact. The defendants upon arraignment each filed pleas of not guilty to each count of the said indictment.

The defendants were placed on trial and on September 25th, 1936, a jury by its verdict found Wilson Stalnaker and J. T. Hammock, Sr., guilty of murder in the first degree with a recommendation to mercy, while the defendant, Nathan Prayther, was found guilty of manslaughter. Judgments were entered on the said verdict and they are here for review on a number of assignments of error, based largely on the grounds of the motion for a new trial, which was seasonably presented, and overruled and denied by the lower court. The grounds of the motion for a new trial in behalf of Wilson Stalnaker comprise ten separate grounds; eleven different grounds for the defendant, J. T. Hammock, Sr., and twelve grounds for the defendant, Nathan Prayther. The transcript shows an exception to the order overruling and denying the joint and several motions for a new trial made on the part of the defendants and are duly presented for a ruling here. The grounds of the motion in behalf of each defendant are substantially the same. Counsel for the defendants made no application for a severance

and the three defendants were tried at one time by the same jury.

Plaintiffs in error contend that the lower court erred in withholding from them or their attorney a list containing the names of the proposed jurors appearing both on the regular and special venire until shortly prior to the hour set for the trial of the defendants and that they were deprived of the right and privilege of a thorough and comprehensive examination into the validity thereof. We are at a loss to understand the exact point to be developed by this assignment. The brief filed in the cause fails to submit authorities in support thereof. An affidavit made by the Hon. W. A. Lewis, Clerk of the Circuit Court of Hamilton County, Florida, shows that "immediately after the Sheriff made his return he made available a list of said venire to any and all persons applying for the same and that he delivered a copy of said venire to defendants' attorney." We fail to find error in this assignment.

It is next contended that the lower court erred in denying defendant Stalnaker's challenge to the proposed juror, J. R. Harrison, who, it is alleged, had formed an opinion as to the guilt or innocence of Stalnaker; that it would require evidence to remove the opinion to defendant Stalnaker's injury, and was forced to use one of his peremptory challenges to exclude the proposed juror after the ten challenges allowed by law had been exhausted. The record does not contain any stenographic report of the *voir dire* examination of this juror; so we would not be justified in holding the trial judge in error. Furthermore, the lower court, when passing upon the motion for a new trial, had before it certificates made by the Hon. J. R. Kelley, State Attorney, and Hon. O. O. Edwards, Assistant State Attorney, to the effect that the juror J. R. Hamilton's testimony as to *opinion of the guilt or innocence of Stalnaker was based on*

rumors or talk and not upon the evidence of the cause, and that such opinion would readily yield to the sworn testimony and the law of the case; that the peremptory challenges of the defendant Stalnaker had not been exhausted, but at the time he had three challenges unexercised. The lower court held these facts to be true, and the assignment is without merit.

It is next contended that the jury failed to comprehend and have full knowledge of the different rulings of the trial court during the progress of the trial when some evidence offered should be considered by the jury as to one defendant and not as to the others, and that particularly was this true as to statements or admissions of one of the said defendants. Counsel for the defendants had an opportunity to avoid this predicament by applying to the trial court for a severance and reciting these facts for the reason, or reasons, for separate trials for each defendant. Counsel was familiar with the evidence against his clients as a hearing was had before the coroner's jury and before the Circuit Court when bail was sought. Counsel should not have been permitted to take advantage of his own error. We have examined the assignment and hold that it is without merit.

It is argued that the rulings of the lower court confused the jury when the admission of alleged statements by the defendants after the time of the homicide and at a subsequent time during the progress of the trial by appropriate instructions the court directed the jury to disregard his former rulings. We have considered this assignment and hold that it is without merit.

The record shows that the defendants, through counsel at the completion of the State's case and again after all the evidence had been adduced, moved the court on a number of grounds to direct the jury to find the defendants

not guilty. The principal ground of that motion being that the evidence adduced would not support a verdict of guilty of any crime embraced in either count of the indictment. The motions as made were by the lower court overruled. We do not think there was error in this ruling. This Court has by an unbroken line of decisions held that it was error to direct a verdict on any question submitted as evidence that should have been considered by the jury. See Folsom v. Hoffman, 100 Fla. 1369, 131 So. 318. A verdict should be directed for one party only when the evidence is legally insufficient to sustain a verdict for the opposite party. Aberson v. Atlantic Coast Line R. Co., 68 Fla. 196, 67 So. 44. If the evidence is conflicting or will admit of different reasonable inferences, or if there is evidence tending to prove the issue, it should be submitted to the jury as a question of fact to be determined by them, and not taken from the jury and passed upon by the court as a question of law. Cameron, etc., Co. v. Law-Engle Co., 98 Fla. 920, 124 So. 814; McKinnon v. Johnson, 57 Fla. 120, 49 So. 910; Starks v. Sawyer, 56 Fla. 596, 47 So. 513; Florida Cent., etc., R. Co. v. Williams, 37 Fla. 406, 20 So. 558; Southern Exp. Co. v. Williamson, 66 Fla. 286, 63 So. 433, L. R. A. 1916C 1208; Bass v. Ramos, 58 Fla. 161, 50 So. 945, 138 Am. St. Rep. 105; Wood Lbr. Co. v. Gipson, 63 Fla. 316, 58 So. 364; Paul v. Commercial Bank, 69 Fla. 62, 68 So. 68; Johnson v. Louisville & N. R. Co., 59 Fla. 305, 52 So. 195; Williams v. Sherry, 94 Fla. 998; 114 So. 849; German-American Lbr. Co. v. Brock, 55 Fla. 577, 46 So. 740; Atlantic Coast Line R. Co. v. Pelot, 62 Fla. 121, 56 So. 496. See King v. Cooney-Eckstein Co., 66 Fla. 246, 63 So. 659, Ann. Cas. 1916C, 163; Gunn v. Jacksonville, 67 Fla. 40, 64 So. 435; Davis v. Ivey, 93 Fla. 387, 112 So. 264; Florida East Coast Ry. Co. v. Hayes, 56 Fla. 588, 64 So. 274; Jacksonville v. Glover, 69 Fla. 701, 69 So. 20; Gravette v.

Turner, 77 Fla. 311, 81 So. 476; Gulf Refining Co. v. Ankeny, 102 Fla. 151, 135 So. 521.

The motion for a new trial in behalf of each defendant raised the question of the sufficiency of the evidence to sustain the verdict as found by the jury. The evidence shows that W. C. Harris was killed about 11:00 o'clock A. M., on Tuesday, July 28, 1936, on the farm of J. T. Hammock, Sr., near Marion Station in Hamilton County, Florida. When killed and for several months prior thereto, he had lived in one of the houses on the farm and worked for the defendant Hammock as a "wage hand," and some of the witnesses stated that under the terms of his employment he was to receive in addition to his wages a one-tenth interest in the flue cured tobacco grown on the place for the years 1936. It seems that two tobacco barns were in operation when he was killed and the tobacco acreage approximated seven to twelve acres. Friction arose between the deceased and the defendant Hammock when terms of settlement were being negotiated whereby the deceased would move from the farm, and during this period the defendant Stalnaker was by Hammock given employment on the farm and his family placed in another house not a great distance from where the deceased and his family were living and on the same farm. On Saturday preceding the fatal altercation on the following Tuesday, the defendant Hammock placed the defendant Stalnaker in the control of his live stock on the place and the curing of the tobacco, and was preparing to plant peas on the tobacco land when the shooting occurred.

The record shows that the defendant Hammock prepared and tendered to the deceased at Jasper on Saturday previous to his death the following Tuesday a check for some twenty-odd dollars, which Hammock claimed was full compensation to date thereof, but the deceased, for some reason

or other, declined to accept the check and execute to Hammock a receipt showing a full settlement between them. Hammock was gathering and curing tobaco and needed a reliable person to stay around his barns and was otherwise short of help, and the defendant, Nathan Prayther, was given employment by the defendant Hammock on Friday night prior to the trouble on Tuesday. Prayther was working in the tobacco for Hammock from Friday until Tuesday.

The deceased had some milk cows on the place which he fed and milked along with some cows of the defendant Hammock. The deceased was instructed by Hammock to build a pen for his (deceased's) milk cows near the house where he was living and let Stalnaker feed and milk the Hammock cattle in the old pen. Hammock stated that he would be forced to get rid of Harris. Some two hours prior to the trouble the women folks of the Hammock and Harris families had clashes when an effort was made to divide some turkeys owned by the two families and raised by the Harris family on the Hammock place. It was settled and the turkeys divided later by Harris and Hammock.

The deceased and Stalnaker for some ten days prior to the trouble, had accused each other of stealing different articles on the farm and owned by the defendant Hammock, and reports thereof would be made to Hammock by each of them. It seems from the evidence that the defendant Hammock approved Stalnaker's conduct and disapproved of the conduct of Harris. Hammock took his gun to the farm and the evidence showed that he and the deceased quarrelled near a hog pen on the place. The merits of the dispute between Hammock and the deceased was not shown by the record. The reason offered for taking the gun to the farm when he quarrelled with the deceased was to shoot some squirrels then eating his young corn. There

is nothing in the record to show that the corn was being eaten by the squirrels or that the same were ever killed. The record shows frequent visits by Hammock from his home at Jasper to the farm.

About 11:00 o'clock A. M., Tuesday, July 18, 1936, the defendant Stalnaker had unloaded some corn into the turkey house and Prayther was placing the farm tools therein and the defendant Hammock and the deceased Harris were under some shade trees near where Harris lived. Stalnaker directed Prayther to bring him from the tool house a "C" link so a barrel of water could be taken to the tobacco barn. Prayther requested instructions about locking the house, and some one of the four directed that it be locked as some stealing was going on about the place, when Harris asked "if Stalnaker thought he (Harris) had been stealing." One word and another was passed until Harris and Stalnaker started to fight. It was claimed by the defendants that the deceased attacked Stalnaker with a "C" link over his hand as a substitute for "knucks," when Stalnaker shot him three times. Stalnaker did not have a mark on him as a result of his fight with Harris. Harris was hit by each of the three pistol balls fired by Stalnaker and in addition thereto had two wounds on his head of considerable length going to the skull on the back of his head. The head wounds were latent and not found until after the body had been prepared for burial.

The defendants at the first trial before the coroner stated that Stalnaker shot the deceased but did not get close enough to him to hit him on the head, while at the trial in the court below the defendants testified that Stalnaker hit deceased on the head with his pistol just before shooting him. The record shows that the defendant Prayther told Herbert Harris at Jasper shortly before the trial that the defendant Hammock struck the deceased from behind on the head

with a plow slide and later, or shortly after the shooting, placed the plow slide in some grass near the turkey house, a short distance from the scene of the homicide. Several witnesses testified to seeing the defendant Hammock near the turkey house shortly after the shooting. There was evidence to show bad feeling between the Harris and Hammock families shortly prior to the shooting. Hammock had stated that he had to get rid of Harris. Dr. Bruce stated that the wounds on Harris' head could not have been inflicted with a pistol, and the jury no doubt thought it could have been inflicted with a plow slide. Some statements were made about the punishment if Stalnaker killed Harris, and Hammock stated that if he did have to kill him he would stay in jail but a day or so.

It is contended in the argument of counsel that Stalnaker acted only in self defense. We have read the evidence carefully and it is difficult to understand how the deceased was the aggressor when he had two wounds on the back of his head, was shot three times, and died within a few feet of his own home and family. If the deceased was the aggressor, it does seem reasonable that in the fight in which he lost his life that some one of his assailants would have had at least a mark or a bruise as the result of the encounter. We think these conflicting statements of evidence was for the jury to settle. If the evidence is conflicting or will admit of different reasonable inference, ir if there is evidence to prove the issue, it should be submitted to the jury as a question of fact to be determined by them, and not taken from the jury and passed upon by the court as a question of law. Cameron, etc., Co. v. Law-Engle Co., 98 Fla. 920, 124 So. 814; McKinnon v. Johnson, 57 Fla. 120, 48 So. 910; Starks v. Sawyer, 56 Fla. 596, 47 So. 513; Florida Cent., etc., R. Co. v. Williams, 57 Fla. 406, 20 So. 558; Southern Exp. Co. v. Williamson, 66 Fla. 286, 63 So. 433,

L. R. A. 1916C 1208; Bass v. Ramos, 58 Fla. 161, 50 So. 945, 138 Am. St. Rep. 105; Wood Lbr. Co. v. Gipson, 63 Fla. 316, 58 So. 364; Paul v. Commercial Bank, 69 Fla. 62, 68 So. 68; Johnson v. Louisville & N. R. Co., 59 Fla. 305, 52 So. 195; Williams v. Sherry, 94 Fla. 998; 114' So. 849; German-American Lbr. Co. v. Brook, 55 Fla. 577, 46 So. 740; Atlantic Coast Line R. Co. v. Pelot, 62 Fla. 121, 56 So. 496. See King v. Cooney-Eckstein Co., 66 Fla. 246, 63 So. 659, Ann. Cas. 1916C 163; Gunn v. Jacksonville, 67 Fla. 40, 64 So. 435; Davis v. Ivey, 93 Fla. 387, 112 So. 264; Florida East Coast Ry. Co. v. Hayes, 66 Fla. 589, 64 So. 274; Jacksonville v. Glover, 69 Fla. 701, 69 So. 20'; Gravette v. Turner, 77 Fla. 311, 61' So. 476; Gulf Refining Co. v. Ankenney, 102 Fla. 151, 135 So. 521.

We have examined the evidence carefully as it affects the defendant Prayther. He was hired to fire the barns by Hammock on Friday night prior to the trouble on Tuesday. There was no evidence of hostility between Prayther and either of the other parties. The record fails to show a threat or an overt act on his part toward the deceased. He was at work for the defendant Hammock when the trouble occurred and no evidence whatsoever was offered to show his connection with the homicide. We fail to find testimony in the record to support the verdict of manslaughter against him as found by the jury.

Counsel for plaintiffs in error failed to observe the rules of this Court in the preparation of the bill of exceptions, transcript of the record and assignments of error relied upon for a reversal, as well as Rule 20 with reference to the preparation of briefs to be used in this Court. Attention again is directed to the statements of this Court about the preparation and filing of transcripts as made in Padgett v. State, 64 Fla. 389, text p. 392, 59 So. 946, Ann. Cas. 1914B 897:

"As we have held in several cases, since the adoption of Special Rule 6, on the 2nd day of March, 1905, plaintiffs in error in criminal and habeas corpus cases have the option of proceeding under Special Rules 1, 2, and 3, adopted on such date, or rule 103, adopted at the April Term, 1873, of this court, in the preparation of their transcripts and bills of exceptions. We further held that these respective modes of procedure must not be blended, but one or the other must be selected and followed. See Clinton v. State, 53 Fla. 98, 43 South. Rep. 312, 12 Ann. Cas. 150; Albritton v. State, 54 Fla. 6, 44 South. Rep. 745; Stephens v. State, 54 Fla. 107, 44 South. Rep. 710; Hallbeck v. State, 57 Fla. 15, 49 South. Rep. 153. While such option may be exercised, we are of the opinion that it is the better and safer procedure for the plaintiff in error in a criminal case to have his transcript prepared and his bill of exceptions made up, settled and certified in accordance with the provisions of such Rule 103. Be this as it may, if such plaintiff in error elects to proceed under Special Rule 1, 2 and 3, as the plaintiff in error in the instant case has done, he should comply carefully with all the requirements of such rules and closely follow the directions given therein. As we have repeatedly held, it is the duty of any party resorting to an appellate court to see that his manuscript of record is properly prepared, in compliance with the rules of court and to make the errors complained of clearly to appear. See Clinton v. State, *supra,* and McKinnon v. Lewis, 60 Fla. 125, 53 South. Rep. 940, wherein prior decisions of this court will be found colleceted."

The judgment against Nathan Prayther appealed from is hereby reversed for a new trial. We think substantial justice was awarded in the lower court as to the defendants, Wilson Stalnaker and J. T. Hammock, Sr., and the

 

said judgments against them and appealed from in this cause are hereby affirmed.

ELLIS, C. J., and WHITFIELD and BUFORD, J. J., concur.
BROWN, J., dissents.