**PERRY ACREE v. STATE OF FLORIDA**

15 So. (2nd) 262                                       June Term, 1943
October 8, 1943                                            En Banc

W. F. *Anderson,* for appellant.

J. *Tom Watson,* Attorney General, *Woodrow M. Melvin* and *T. E. Duncan,* State Attorney, for appellee.

CHAPMAN, J.:

The record in this case discloses that Perry Acree, the appellant, was adjudged insane and admitted as a patient to the Florida State Hospital for the Insane at Chattahoochee, Florida, on June 15, 1934, and there diagnosed as "chronic alcoholism; suicidal and homicidal tendencies and dementia praecox." Acree, on December 30, 1936, was discharged from the hospital. He was readmitted to the hospital on April 9, 1937, and by the medical staff of the State Hospital diagnosed viz: "It is the concensus of opinion that he (Acree) is a constitutional psychopath, chronic alcoholic, high grade moron, and a potential criminal." On October 24, 1939, he was discharged from the hospital and readmitted on the former commitment May 12, 1941, and on Sunday, July 12,

1942, Perry Acree and Harry Marshall Heavener escaped from the hospital, and on the afternoon of July 16, 1942, K. D. Shores was robbed and killed near Morriston, in Levy County, Florida. Subsequently the appellant was found in possession of some of the deceased's clothing, money taken from his person and Shores' automobile.

On October 19, 1942, Perry Acree and Harry Marshall Heavener were by a grand jury of Levy County, Florida, indicted for the murder of K. D. Shores in Levy County, on July 16, 1942. The first count of the indictment charged Perry Acree and Harry Marshall Heavener as principals, while the second count charged Perry Acree as principal and Harry Marshall Heavener as an accessory. Counsel for Perry Acree, on October 20, 1942, prior to his arraignment, by petition, under the provisions of Sections 917.01, 917.02 and 917.03, Fla. Stats. 1941, made known to the trial court the adjudication of insanity of Perry Acree and his probable insanity on October 20, 1942. It was suggested that the mental condition of Perry Acree, at the time, was such that he could not assist his counsel during the trial of the cause. Neither could he plead to the indictment then pending against him. An order was sought fixing a time and place of hearing when the State of Florida and the defendant Acree could adduce witnesses and documentary evidence touching the present sanity of Acree and his mental and physical ability to co-operate and assist counsel in the preparation and trial under the indictment pending against him. The trial court granted the petition and by appropriate order directed the issuance of subpoenas ad testificandum to Doctors W. H. Spires and E. E. Pate, disinterested qualified experts on insanity, and other witnesses requested, returnable October 26, 1942, at Bronson, Florida, the date set for the hearing.

A hearing was had by the trial court pursuant to the previous order made and the parties were represented by counsel. Doctor Spires and Pate and Mrs. Katie Acree appeared and testified—were examined and cross examined by counsel, and the trial court, after hearing all the testimony, held that Perry Acree was then sane, understood the nature and seriousness of the offense charged against him; that he

was mentally and physically able to assist his counsel during the progress of the trial.

On October 27, 1942, after the sanity inquisition, Perry Acree and Harry Marshall Heavener were each arraigned by the State on the indictment charging each of them with the crime of murder in the first degree. Perry Acree at the time was represented by counsel and entered a plea of not guilty to each count of the indictment, while Harry Marshall Heavener tendered a plea of guilty to the second count of the indictment and the same were accepted by the State of Florida. The trial court granted a severance, and Perry Acree, on October 27, 1942, was placed upon trial in the Circuit Court of Levy County, and a jury, after hearing the testimony, argument of counsel and charge of the court, returned a verdict of murder in the first degree. A motion for a new trial was made, heard and denied, and Perry Acree by the trial court was sentenced to death by electrocution. From this sentence and judgment an appeal has been perfected to this Court. Six questions are posed by counsel for appellant for adjudication in this Court.

The testimony, on which the trial court predicated his order and holding is in effect that Perry Acree was then sane; that he then appreciated the seriousness of the charges pending against him; that he at the time was qualified to plead to the indictment charging him with murder in the first degree; that he was mentally qualified and able to assist counsel in the trial of his cause, has been certified to this Court. Although counsel for the appellant does not here challenge this order, it is likely that the trial court and counsel followed our recent utterances in Stanton v. State, 148 Fla. 732, 5 So. (2nd) 4.

On October 27, 1942, the date set for the trial of the cause, counsel for the appellant filed a sworn motion for a continuance of the trial of the case until the next regular or special term of court, because of the absence of Mrs. E. D. Keel, a material and necessary witness for the defendant who was a resident of Plant City, Florida, and possibly ill and not physically able to attend the trial at the time set but probably could at a subsequent date if the trial was postponed. Counsel

for defendant caused a subpoena to issue for the absent witness on October 22, 1942, and mailed to the Sheriff of Hillsborough County, Florida, for service. The movant had not talked with the absent witness but defendant Acree had talked with her, but counsel had not had an opportunity to discuss with the absent witness her proposed testimony, but understood from consultation with Acree that she would testify to the "acts and doings" of Acree for many years prior to his commitment to the State Hospital for the Insane as a patient, and also his acts, demeanor and conduct during the periods of time when away from the hospital. The absent witness is an aunt of the appellant. The motion was defective in many ways. It was not executed in accordance with Section 198 of the Criminal Procedure Act (916.04 Fla. Stats. 1941); it contained no statement about the legal residence of the absent witness or that the witness could not be found; no facts were given "showing that the applicant (expected) to be able to procure the attendance of the witness at a specified time;" there was no statement that the witness was not absent because of the direct or indirect connivance of the applicant; there was no averment that injustice to applicant would result if the trial proceeded without the witness; there was no allegation that the witness was within or without the jurisdiction of the court; and there was no statement that the witness would appear not later than the next term, or that her deposition would be taken. Section 199 Criminal Procedure Act; Section 916.05, Fla. Stats. 1941.

The law or controlling rule applicable to a continuance in a criminal case is well established by this Court even prior to the enactment of the Criminal Code. See Gladden v. State, 12 Fla. 562; Ballard v. State, 31 Fla. 266, 12 So. 865; Pittman v. State, 51 Fla. 94, 41 So. 385, 8 L.R.A. (N.S.) 509; Moore v. State, 59 Fla. 23, 52 So. 971; Landrum v. State, 79 Fla. 189, 84 So. 535; Sanford v. State, 90 Fla. 337, 106 So. 406, and many other cases. Section 199 of the Criminal Code— Section 916.05, Fla. Stats. 1941—enumerates the several formal requirements of an application for a continuance of a criminal case on the ground of an absent and necessary witness.

In both criminal and civil cases it is settled law that an application for a continuance is addressed to the sound discretion of the trial court and the denial thereof will not be reversed unless it clearly appears that there has been a palpable abuse of this judicial discretion. Motions for continuance in criminal cases are to be more closely scanned or examined by the trial court than in civil cases because of the greater temptation to delay. It cannot be accurately contended that Section 916.05, Fla. Stats. 1941, has modified or materially altered the established rule applicable to continuances in criminal cases. The motion for a continuance in the case at bar fails to conform to the established rule and appellant and counsel failed to carry the burden cast on them by law in clearly showing an abuse of discretion on the part of the trial court in overruling and denying the motion for continuance of the cause.

On October 27, 1942, after the trial court had entered an order overruling and denying the motion of the defendant for a continuance of the cause until the next regular or special term of the court, proposed jurors were then called into the box and sworn on their voir dire. It appears from the record that counsel engaged in the trial had about agreed upon the panel and the swearing of the jury requested, when a proposed juror admitted that he had a fixed opinion as to the guilt or innocence of the defendant and this fact was brought to the attention of the trial court. The court ordered that the proposed juror stand aside and another was called in his place. It is here contended that this ruling constitutes reversible error.

A broad discretion is vested in the trial court in determining the qualification of a juror. The objective of such a proceeding is a fair and impartial trial according to law and a prejudiced juror necessarily would be an unfit and improper person to render an impartial verdict. It has not been made to appear that the appellant had exhausted his challenges or that the substituted juror was legally disqualified, prejudiced toward the defendant, or otherwise objectionable to him. We fail to find error in this ruling. See King v. State, 125 Fla. 316, 169 So. 747; Powell v. State, 131 Fla. 254, 175 So. 213;

Stalnacker v. State, 133 Fla. 671, 183 So. 294; Hall v. State, 136 Fla. 644, 187 So. 392; Carroll v. State, 139 Fla. 233, 190 So. 437.

It is next contended that the judgment should be reversed because the trial court permitted or allowed W. B. Bush and Dr. E. E. Pate, witnesses adduced by the State, to leave the witness stand prior to their cross examination, thereby depriving the appellant of his constitutional rights. We have not been cited with authorities by counsel for the appellant holding that the alleged ruling of the trial court was error. Our study of the record discloses that counsel for the appellant cross examined the witnesses, and additional thereto the appellant personally cross examined them on practically everything about which they testified. We fail to find in the record objections to the retirement (from the witness stand of the two witnesses prior to their retirement) made by the appellant or counsel. The right to further cross examine the witnesses prior to their retirement as witnesses was never requested (of the trial court; it does not appear at any place in the record of the proceedings of the trial that counsel or appellant requested) or made known to the trial court their desire or intention to further cross examine the witnesses prior to their retirement; if constitutional rights of the appellant were denied by the retirement of the witnesses prior to the full and complete cross examination, we fail to find in the motion for a new trial a record thereof, or the exact testimony in direct examination by the State upon which they were denied the privilege of cross examining. We fail to find merit in this contention.

The appellant, when on the witness stand in his own behalf testified, among other things, that he had no knowledge or memory of killing Mr. Shores on the afternoon of July 16, 1942; that he frequently had convulsions and on July 16th had a convulsion and lapse of memory and the accomplice, Heavener, testified that during this period Perry Acree beat Shores over the head with an automobile crank; that he took money from his person; and rode away from the scene near Morriston in Shores automobile. Counsel for the parties, around the noon hour, announced the resting of their case,

but when court convened at 2:00 P. M., the state attorney asked the court to reopen the case and for permission to recall Dr. Pate, which was by the court granted, and the witness testified that during the period (approximately 12 months) he had known Perry Acree as a patient at the insane hospital and that he (Acree) had never had a convulsion. Mr. Dowling was called and testified that he knew Perry Acree when he was confined at Raiford and that Acree had never to his knowledge during his incarceration there (about four months) ever had a convulsion. Then the State of Florida, for the second time, announced the closing of the State's case. Then counsel for the defendant introduced for the consideration of the jury certified copies of the records of Charlotte County, Florida, appertaining to the insanity record of Perry Acree previously recorded in said County, when counsel for appellant remarked, "I would like to submit some more witnesses to the witness stand, if it is all right with the court." The Court, "It has all been closed now." By Mr. Williams, "And for the second time." It is contended that the foregoing was prejudicial. We fail to find merit in this contention.

We have held that when a person is adjudged to be insane by a court of competent jurisdiction then the presumption continues until such a time when it is established by competent evidence that sanity has returned. While the presumption of insanity raised by the adjudication is not in law always recognizable as conclusive, it is, or may be, a rebuttable presumption which may be overcome by proof to the effect that the accused was of sufficiently sound mind and conscience at the time of the commission of his acts. See Corbin v. State, 129 Fla. 421, 176 So. 435.

Likewise it is settled law, and we have so held on numerous occasions, that the issue of sanity of the accused at the time of the commission of the offense was an issue of fact and within the province of a jury to settle, under appropriate instructions, along with the issue of guilt or innocence under a plea of not guilty. See Williams v. State, 45 Fla. 128, 34 So. 279; Johnson v. State, 57 Fla. 18, 49 So. 40; Cochran v. State, 65 Fla. 91, 61 So. 187; Southworth v. State, 98 Fla.

1184, 125 So. 345; Williams v. State, 100 Fla. 814, 129 So. 456; Crews v. State, 143 Fla. 263, 186 So. 590.

We find in the record considerable testimony on the issue of the sanity of the appellant on July 16, 1942. The appellant conceived the idea of escaping from the hospital; he discussed it with the accomplice Harry Marshall Heavener; pursuant to the agreement reached, they met on the hospital grounds at the appointed hour, made up their party, and fled; they made their way to Quincy, Tallahassee, Perry, Cross City, Chiefland and Bronson. They broke into a home situated on the Tallahassee and Perry highway and obtained a pistol and something to eat. They obtained rides from motorists along the route. They were without money and asked for food along the highway. Some of the individuals giving them money, food, rides and from whom they bought articles were called as witnesses and interrogated as to the acts of the appellant which occurred a few hours prior to the homicide. Witnesses observing the conduct and demeanor of the appellant subsequent to the homicide were called. The appellant took Detective Bush to a wooded spot near Keystone Heights, where he and Heavener left Shore's automobile. The clothes of the deceased by them had been hidden in a pond or lake nearby and those were obtained. Care was taken to obliterate their finger prints about the car. They drove with the officer over the road by them traveled on the day of the homicide. They pointed out people to the officer along this road who gave them money, food, rides, and from whom they purchased articles. These parties testified to the acts of the appellant.

Dr. Pate had been employed at the State Hospital about one year prior to the appellant's escape and knew him there. He had specialized in mental diseases and expressed the opinion that the appellant was sane on July 16, 1942. It was not the appellant's insanity that prevented his discharge from the hospital, but his alcoholic and criminal tendencies and his inability to adjust himself when away from the hospital. Dr. Spires examined the appellant and expressed the opinion that he was sane on July 16, 1942.

The appellant, in the lower court and on appeal here, contends that he was insane on July 16, 1942, and for this reason

failed to appreciate the consequences of his acts if he took the life of the late Mr. Shores. Introduced into evidence to sustain this contention was a certified copy of the records of Charlotte County, Florida, wherein the appellant was adjudged insane. It was established that several close relatives of the appellant were mentally weak or insane. The appellant's record as a patient at the Florida Hospital was emphasized. The diagnosis of the mental condition of the appellant by the staff physicians was established.

The appellant, when on the stand as a witness, stated that he had a convulsion and his mind became a blank and he had no knowledge of killing Mr. Shores. That he had these convulsions frequently and always resulted in a lapse of memory. Mr. Dowling, the jailer, testified to the effect that the appellant had been observed by him for some time subsequent to July 16, 1942; that he saw him frequently and never knew of his having a convulsion. Dr. Pate testified to about the same thing.

Harry Marshall Heavener testified about leaving the hospital on July 12, 1942, with the appellant and traveled to Quincy, Tallahassee, Cross City and Bronson; that the deceased, Shores, a traveling salesman, picked them up and appellant placed a pistol on the body of Shores and made him drive the car to the spot where his body was later found; the appellant forced the deceased at the point of a gun to get on the ground, stomach down, and then the appellant beat him over the head with an automobile crank found in the car; they took his money, clothes and car, and as they drove away the appellant shot the deceased; and that the appellant appeared to get considerable pleasure in striking deceased over the head with the car crank.

Counsel for appellant points out that the testimony adduced on the part of the State is legally insufficient to sustain the findings of the jury to the effect that the appellant was sane on July 16, 1942. The answer to the contention is that the sanity of the appellant was a question of fact to be heard, considered and decided by a jury under appropriate instructions. It has not been made to appear that the jury in the rendition of its verdict was influenced by matters dehors the

record. The controlling principle of law is not what the court may think the jury ought to have done or what the court may think it would have done had it been sitting as a juror in the case, but whether as reasonable men the jury could have found such a verdict from the evidence. It is the duty of the Court under such circumstances to uphold the verdict and judgment. See Pickerson v. State, 94 Fla. 268, 113 So. 707; Ballard v. State, 95 Fla. 997, 117 So. 381.

Careful consideration has been given to each question propounded by counsel for adjudication on this appeal and we fail to find error in the record, and, accordingly the judgment appealed from is hereby affirmed.

It is so ordered.

BUFORD, C. J., TERRELL, BROWN, THOMAS and ADAMS, JJ., concur.

SEBRING, J., not participating.