BARKDULL, Chief Judge.
On April 11, 1963, a United States Coast Guard vessel received a message from the motor vessel “Dream Girl” that “I have killed two people”. Upon further communication over the marine radio, the person in communication with the Coast Guard from the motor vessel “Dream Girl” upon inquiry, announced that he had thrown the bodies overboard. The Coast Guard vessel proceeded to the “Dream Girl”. Upon approaching, it found the appellant aboard; no other persons aboard; the “Dream Girl” the scene of a violent struggle; one of the awnings torn; and blood splattered all over inside the cockpit. Whereupon the Coast Guard officials took the appellant aboard their vessel, took the “Dream Girl” in tow, and proceeded to Key West, Florida, arriving there about 10:30 A.M., April 13, 1963, at which time they were met by Sheriff Brown of Monroe County and Deputy Sheriff L’Heureux, and the appellant was delivered to their custody. Before taking any statement from the appellant, he was advised by Sheriff Brown as follows:
* * * * *
“ * * * I wish to question you in regards to the murders of Douglas Trevor and his son, Edward Trevor, but first, I want to advise you and caution you that you do not have to make any statements whatsoever, if by doing so, you will tend to incriminate yourself; however, if you are willing to make a statement concerning these offenses for which you are being held, you may request the presence of counsel on your behalf at this time, if you wish to do so, before I proceed further in this matter.
“A No, sir, I wish to continue.
“Q I also wish to warn you that if you do make any statements or admissions in connection with the matter we are investigating, such statements or admissions may be used against you at any time. I wish to emphasize that only statements you make must be made freely and voluntarily by you and that you may refuse to make any such statements or answer any questions which may incriminate or tend to incriminate you in connection with the offenses concerning which I desire to question you, nor need you make any statements or admissions in relation to any matter whatsoever that may tend to incriminate you. Do you fully understand everything that I have just stated to you and do you wish to continue at this time?
“A Yes, sir.”
******
Thereafter, in the presence of the Deputy Sheriff, the appellant reiterated to the Sheriff that he had killed two people aboard the vessel “Dream Girl” and thrown the bodies overboard. He subsequently reenacted the crime aboard the “Dream Girl” and pictures were taken depicting the reenactment.
After being indicted for first degree murder, the appellant entered a plea of insanity and, upon examination, was so adjudicated in the fall of 1963. Subsequently, in 1971, he was found competent and brought on for trial, which resulted in a conviction for second degree murder, and this appeal ensued. As points for reversal, the appellant urges that the trial court erred in permitting his oral confession to be admitted into evidence because of a failure to give the Miranda warnings [see: Jimenez v. State, Fla.App.1968, 208 So.2d 124; Woods v. State, Fla.App.1968, 211 So.2d 248; Craig v. State, Fla.App.1968, 216 So.2d 19; Abram v. State, Fla.App.1968, 216 So.2d 498; James v. State, Fla.App.1969, 223 So.2d 52]; that the court erred in permit *99 ting pictures of the reenactment of the crime to be admitted in evidence because the appellant had not been adequately advised of his rights under Miranda; that the trial court erred in submitting the issue of his sanity to the jury when the evidence, as a matter of law, showed that he was insane at the time of the commission of the crime charged; and, lastly, that the trial court erred in denying a motion for mistrial because of an emotional plea made by the wife of the deceased in the presence of the jury at the time of the trial.
As to the first point, we recognize that although the confession was made prior to the rendition of the Miranda decision, the trial having occurred after such decision, in measuring whether the oral statements and reenactment of the crime should have been permitted into evidence such introduction would be subject to the principles enunciated in Miranda. Glover v. State, Fla.App.1967, 203 So.2d 676; Ard v. State, Fla.App.1970, 233 So.2d 439; Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882. However, in this cause, it is apparent that the-appellant voluntarily announced over the international marine radio that he had killed two people; he voluntarily announced over the same media of communication how he had disposed of the bodies. The initial statements made by the appellant were not made as a result of any custodial situation and we find, under the circumstances, that the Miranda requirements were not available to the appellant in the instant case because of the voluntary admissions made prior to his being taken into custody.[1]
As to the issue of insanity, there were a number of experts produced who indicated that in their judgment the appellant was insane at the time of the commission of the crime. There was also lay testimony by officers and crew members aboard the Coast Guard vessel, the sheriff and a deputy sheriff that he appeared to be normal to them. This observation occurred shortly after the crime was committed. Of necessity, neither the experts nor the lay witnesses were present at the time of the commission of the act, and we do not find that the trial court committed any error by failing to rule, as a matter of law, upon the motion for directed verdict that the appellant was insane' at the time of the commission of the crime. Acree v. State, 153 Fla. 561, 15 So.2d 262; Brock v. State, Fla.1954, 69 So.2d 344; Norman v. State, Fla.App.1963, 156 So.2d 186; Crum v. State, Fla.App.1965, 172 So.2d 24; Byrd v. State, Fla.App.1965, 178 So.2d 886; Brady v. State, Fla.App.1966, 190 So.2d 607; Blatch v. State, Fla.App.1968, 216 So.2d 261; Putnam v. State, Fla.App.1969, 227 So.2d 60.
At the time of the trial, the wife of the deceased, in identifying the corpus de-licti, testified to the fact that the deceased was never seen after leaving on the boat[2] with the appellant and another person and, upon leaving the witness stand, made the following statement: “Please help me, please. * * * Please help me. * * * Please help me, please help me.” Whereupon the record reflects the following took place:
:fc ‡ sf: i{c ‡
MR. CARR: (Defense Counsel)
* * * * ‡ *
“At this time, without any question as to the good faith of the prosecutor—we know that this took place without his consent or approval.—-we are obliged to move for a mistrial; and in the alterna *100 tive, in the event the Court does not see fit to grant it, that the jury be instructed to disregard it and then polled to ask if they will be able to eliminate this incident from their minds in considering the case.”
THE COURT:
‡ * ‡ ‡
“I don’t think there is any question that it was highly improper. I am inclined at this time to deny the motion for a mistrial.
“I think the jury ought to be polled and be instructed first to disregard this emotional outburst and what the witness had to say to the jury, and then poll each individual juror and ask them the question as to whether or not they can decide this case, be objective and decide this case based on the testimony that is adduced here fairly and objectively, and disregard it.
“Does counsel have any suggestion to the specific question by way of polling the jury?”
ifc >}c
MR. CARR:
“May it please the Court, I suggest that the Court give them a direct, positive instruction, ‘I instruct you to disregard and to eliminate from your minds and your consideration the incident when the witness spoke to the jury after leaving the witness stand and while en route from the courtroom,’ and after telling them that, then tell the jury that you want to ask them individually can they abide by your instruction and will they do it.
“Now, that, I think, is the only method in which an attempt can be made to cure it.”
THE COURT:
“Ladies and gentlemen of the jury, I am instructing you to eliminate and disre- . gard from your consideration the emotional outburst of the witness who just testified.
“I am going to ask you individually whether or not you can abide by this instruction that I have just given you; that is, to completely eliminate and disregard from your consideration the emotional outburst of this witness, that is, what she had to say to you as she was leaving the witness stand.
“Now, let me have your jury list.”
Thereupon, the court polled all the jurors and the alternate juror and received a response in the affirmative. It is recognized that ordinarily a member of the family of the deceased should not be called to testify as it constitutes prejudicial error to prove the decedent’s family status in a homicide prosecution. Hathaway v. State, Fla.App.1958, 100 So.2d 662; Gibson v. State, Fla.App., 191 So.2d 58; Ashmore v. State, Fla.App.1968, 214 So.2d 67. However, the case sub judice comes within the exceptions to the general rule. Wolfe v. State, Fla.App.1967, 202 So.2d 133; Furr v. State, Fla.App.1969, 229 So.2d 269; Scott v. State, Fla.App.1971, 256 So.2d 19. And, when defense counsel made a motion in the alternative for a mistrial or a polling of the jury and received the latter and made no further motion for mistrial after the jury was polled, we hold that error if any was waived by accepting the alternative request by defense counsel.
Therefore, for the reasons above stated, the jury verdict and judgment thereon and sentence be and the same is hereby affirmed.
Affirmed.

. It is also interesting to note that at no time, including the present, has the appellant ever indicated he was indigent at the time he was apprehended. People v. Post, 23 N.Y.2d 157, 295 N.Y.S.2d 665, 242 N.E.2d 830.

. It appeared that the appellant had motored from Atlanta, Georgia, to Key West and chartered the motor vessel “Dream Girl” to take him on a fishing trip; that the “Dream Girl” left the docks at Key West with the deceased, the appellant, and another aboard on April 11, 1963.