433 So.2d 496 (1983)
Solomon WEBB, Appellant,
v.
STATE of Florida, Appellee.
No. 58306.
Supreme Court of Florida.
April 14, 1983.
Rehearing Denied July 12, 1983.
*497 Richard L. Jorandby, Public Defender; Craig S. Barnard, Chief Asst. Public Defender and Tatjana Ostapoff, Asst. Public Defender, Fifteenth Judicial Circuit, West Palm Beach, for appellant.
Jim Smith, Atty. Gen., and Russell S. Bohn and Mark Horn, Asst. Attys. Gen., West Palm Beach, for appellee.
ADKINS, Justice.
We have before us a direct appeal from a judgment imposing the death sentence upon Solomon Webb. Jurisdiction is pursuant to article V, section 3(b)(1), Florida Constitution.
Webb (hereinafter appellant) was adjudged guilty of first-degree murder in the shooting death of John Krasner, an alleged "porno king." At about 11:30 p.m., February 5, 1979, Krasner was shot in the parking lot of the Fort Lauderdale Motel. Krasner's son and daughter-in-law saw him lying in the parking lot, still alive. Krasner said he had been shot and robbed. He subsequently died as a result of a gunshot wound to the abdomen.
Witnesses testified that they had seen a black man of appellant's general description wearing dark clothes and white shoes in the parking lot area of the motel around the time Krasner was shot.
Appellant's wife testified that appellant was with her on the night of the shooting until about 11:00 p.m., that he left for a short while, and that when he returned he was upset. She also testified that he was wearing a green shirt, black pants, and white sneakers.
Another witness (one of appellant's cellmates) testified that on the day of appellant's arrest he overheard appellant say that he had "robbed a guy on the beach" and that he "had to blow his brains out."
Finally, an eye witness testified that he saw appellant shoot Krasner three times.
After appellant's adjudication of guilt by the trial court the jury recommended that appellant be sentenced to life imprisonment. The trial court, having reviewed the presentence investigation report along with the jury's recommendation, sentenced appellant to death.
Appellant takes issue with his conviction and sentence of death.
With respect to the conviction appellant raises four issues. Appellant first contends that the joint representation by the public defender of him in his murder trial and of his wife in her contempt proceeding constituted a clear conflict of interest which effectively denied him his right to counsel.
*498 Appellant and his wife were not co-defendants in either of their respective cases, nor were their interests adverse or hostile to each other. Additionally, as defendants, neither appellant nor his wife had an interest in the outcome of the other's proceeding such as would render the public defender incapable of advising and representing either client adequately.
We agree with the Fifth Circuit's definition of "conflict of interest" set forth in Foxworth v. Wainwright, 516 F.2d 1072 (5th Cir.1975). A conflict of interest arises when "... one defendant stands to gain significantly by counsel adducing probative evidence or advancing plausible arguments that are damaging to the cause of a codefendant whom counsel is also representing." 516 F.2d at 1076.
Because of the divergent nature of the proceedings and the absence of common interests between appellant and his wife, we find no conflict in the facts before us.
Appellant next argues that his inculpatory statements to the police should have been suppressed because they were elicited unlawfully. We will address this argument in the interest of justice, notwithstanding appellee's contention that the issue had not been properly preserved for appellate review.
After a careful review of the record we find that appellant's statements were made voluntarily and were therefore admissible. There were no forces exerted upon the appellant to cause his statements to be invalidated. See Burch v. State, 343 So.2d 831 (Fla. 1977).
Appellant's third argument is that his right to a fair trial was violated because of the admission by the trial court of the testimony of Bruce Sapp, an eye witness to the crime. Appellant contends that Sapp's testimony was the product of a delay by the prosecutor in complying with the discovery rule, Florida Rule of Criminal Procedure 3.220(a)(1)(i). This discovery violation, argues appellant, warrants a reversal of his conviction.
We disagree. The record makes clear that the trial judge was aware of the difficult position defense counsel was in, having to talk to Sapp on such short notice. To accommodate defense counsel the trial judge agreed to recess the trial for the day each day at the noon hour to provide defense counsel with time to depose and otherwise question Sapp. This was done in conjunction with the prosecutor's representation that he would not call Sapp as a witness before the third day of trial.
Defense counsel objected to Sapp's testimony a second time, again moving for a continuance, immediately prior to Sapp's being called as a witness. At this time he gave no specific indication that the time granted him by the trial judge was inadequate for his investigation of Sapp. He did not indicate that he was unable to depose Sapp in the allotted time or that any specific problems arose which required additional time to investigate. Defense counsel merely voiced his general objection that there was a discovery violation and that he therefore needed more time. Once again the trial judge denied the motion for continuance.
The law is settled that an application for a continuance is addressed to the sound discretion of the trial court. A denial of a continuance will not be reversed unless there has been a clear showing of a palpable abuse of this judicial discretion. See Acree v. State, 153 Fla. 561, 15 So.2d 262 (Fla. 1943); Matera v. State, 218 So.2d 180 (Fla. 3d DCA) cert. denied, 225 So.2d 529 (Fla.), cert. denied, 396 U.S. 955, 90 S.Ct. 424, 24 L.Ed.2d 420 (1969).
We find in the record before us no palpable abuse of discretion by the trial judge in denying the motion for a continuance.
Appellant's argument that the trial court erred by instructing the jury on flight is without merit. The record supports the trial judge's inclusion of this instruction.
We turn now to a consideration of appellant's argument that the trial court erred in imposing the death sentence in spite of the *499 jury's recommendation that appellant be sentenced to life imprisonment.
It is now well established that a jury recommendation under our death penalty statute should be given great weight. We held in Tedder v. State, 322 So.2d 908, 910 (Fla. 1975), that "[i]n order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ." That is not the situation here.
The facts of this case do not justify an over-ride of the jury recommendation.
Appellant's conviction is affirmed, but the sentence is vacated. This case is remanded, however, with instructions that the trial judge impose a life sentence with no possibility of parole for twenty-five years.
It is so ordered.
ALDERMAN, C.J., and OVERTON and McDONALD, JJ., concur.
BOYD, J., dissents with an opinion.
BOYD, Justice, dissenting.
I totally disagree with the majority's holding that appellant was not deprived of effective assistance of counsel. A close look at the record reveals a clear case of conflict of interest. The public defender's office was required over its objection to perform the conflicting duties of representing both the defendant and a state witness. Such dual representation creates a conflict of interest because "[n]o man can serve two masters." Matthew 6:24 (King James version). Because of this blatant conflict of interest, appellant was denied his constitutional right to effective assistance of counsel.
To prove my point I need to give a more detailed account of what occurred. On March 3, 1979, the committing magistrate appointed the public defender to represent appellant. Appellant's wife, Mrs. Webb, was subpoenaed by the state to testify against her husband. She failed to appear on the day she was called. On July 31, 1979, a mistrial was declared as the jury was deadlocked in a ten-to-two vote for acquittal. Subsequently, the trial court appointed Mr. Paris, an assistant public defender from the same office that was representing appellant, to represent Mrs. Webb in a contempt of court proceeding. Mr. Paris moved to withdraw, asserting a conflict of interest. On August 6, 1979, the trial judge, who was also presiding over appellant's case, denied the motion, and, after holding a hearing, adjudicated Mrs. Webb to be in contempt of court and sentenced her to six months in prison. The judge appointed the public defender's office to handle her appeal. Although the judge later appointed a special assistant public defender to represent Mrs. Webb for the limited purpose of setting bond, the public defender's office continued to represent her throughout her appeal which was pending during appellant's second trial.
Meanwhile, on September 6, 1979, the public defender filed a motion to withdraw from appellant's case on the basis of a conflict of interest. At the hearing the public defender, Mr. Schreiber, asserted there was an irreconcilable conflict because Mrs. Webb was listed as a witness against appellant. When he began to explain how the potential conflict might manifest itself, the trial court asked him if he had had any communications with Mr. Paris. Mr. Schreiber replied:
Yes. I have talked to Mr. Paris. I have also had my investigator, Mr. Welch, talk to Mrs. Webb. And it is really a substantial problem in the office.
It has been inevitable that we talk things over. And at this juncture I don't know what Mrs. Webb's intentions are, whether she is going to invoke the attorney-client and husband-wife privilege or the defendant's amendment [sic] privilege.
The secondary problem is we have a situation where the attorney who represents the wife, Mr. Paris, is an employee of myself, who represents Solomon Webb. *500 And there is a master-servant-type relationship.
Under the Florida Constitution, the assistant serves my pleasure. And under the law he works under my supervision and pursuant to my requests. Pursuant to the Constitution, he does what I tell him to do.
And it is creating a problem. For instance, if this case should go to trial next week, and I could, if I was so inclined, tell Mr. Paris to tell Mrs. Webb to take the Fifth, and she would be in a situation of an irreconcilable conflict because he has to  pursuant to his job  follow my dictates.
And on the other hand, his client may have adverse intentions. Then I could  it is just a multitude of problems that have arisen now.
My investigator talked to Mrs. Webb. She has told him what she knows about the case.
We have gotten into confidential communications, I'm sure, during the course of his discussions on the case. And it is a very unfortunate situation that has arisen. My investigator has gone up to the jail and talked to Mrs. Webb.
Furthermore, Mr. Paris had talked to Mr. Webb. And it is getting to be more and more of a conflict all of the time.
The trial judge then questioned Schreiber and the assistant state attorney as to how such dual representation was or was not prejudicial. After listening to both attorneys' responses, the trial judge expressly refrained from deciding whether there was a conflict of interest, but instead denied the motion to withdraw on the basis there was no prejudice.
This ruling was in error. There is no question that an attorney's representing a defendant and a key prosecution witness creates a conflict of interest. E.g., Ross v. Heyne, 638 F.2d 979 (7th Cir.1980); United States v. Martinez, 630 F.2d 361 (5th Cir.1980), cert. denied, 450 U.S. 922, 101 S.Ct. 1373, 67 L.Ed.2d 351 (1981); United States v. Morando, 628 F.2d 535 (9th Cir.1980); Cowell v. Duckworth, 512 F. Supp. 371 (N.D. Ind. 1981). A conflict may exist even though the defendant and prosecution witness are represented by different attorneys from the same public defender's office on unrelated charges. Allen v. District Court in and for Tenth Judicial District, 184 Colo. 202, 519 P.2d 351 (1974).
One of the most important factors to be considered in determining whether there is a conflict of interest is the attorney's own representations to the trial judge. Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); United States v. Morando. In Florida a lawyer is ethically bound to discontinue "multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client." Fla.Bar Code Prof.Resp., D.R. 5-105(B). When a public defender perceives a conflict of interest, he or she must move the court to appoint separate counsel. § 27.53(3), Fla. Stat. (1981). If a public defender "perceives a potential conflict, this judgment should be accorded substantial deference by the trial court." State v. Bell, 90 N.J. 163, 173, 447 A.2d 525, 530 (1982).
In this case the public defender gave the trial judge adequate reasons why there was a conflict of interest. First of all Mrs. Webb was a key prosecution witness. Without having the benefit of her testimony, the first jury voted ten to two for acquittal. At the second trial, at which Mrs. Webb testified (along with other witnesses, one of whom was also absent from the first trial) appellant was convicted. Thus her testimony was important to the state's case and highly prejudicial to the appellant. Having been appointed to represent her, the assistant public defender was ethically bound to encourage Mrs. Webb to cooperate with the state and testify against her husband. His professional obligation to encourage her to testify was in direct conflict with the duty of his superior, the public defender, to represent appellant to the best of his ability. United States v. Alvarez, 580 F.2d 1251 (5th Cir.1978).
*501 Secondly, the public defender advised the trial judge that his representing appellant was hampered by his having to safeguard the confidentiality of information received from Mrs. Webb while representing her. The public defender was not obliged to reveal to the trial judge the contents of these confidential communications. Holloway v. Arkansas. The public defender's possession of confidential communication may have resulted in a conflict of interest because the public defender may not have vigorously cross-examined Mrs. Webb for fear of breaching his ethical obligation to not reveal any confidential communications. We need not speculate on the degree of prejudice which may have resulted since the United States Supreme Court has clearly held that "whenever a trial court improperly requires joint representation over timely objection reversal is automatic." Holloway v. Arkansas, 435 U.S. at 488, 98 S.Ct. at 1181.
Because appellant's counsel was forced, over timely objection, to serve two masters with opposing interests, appellant was denied his constitutional right to have effective assistance of counsel. I would therefore reverse his conviction.