216 So.2d 498 (1968)
Willie ABRAM, Appellant,
v.
STATE of Florida, Appellee.
No. K-56.
District Court of Appeal of Florida. First District.
November 26, 1968.
T. Edward Austin, Jr., Public Defender, and Ralph W. Nimmons, Jr., Asst. Public Defender, for appellant.
*499 Earl Faircloth, Atty. Gen., and George R. Georgieff, Asst. Atty. Gen., for appellee.
WIGGINTON, Chief Judge.
Appellant was indicted for murder in the first degree, tried by a jury and found guilty with a recommendation of mercy. From the judgment of conviction and sentence of life imprisonment imposed upon him, he has taken this appeal.
By his first point appellant contends that the trial court erred in admitting into evidence an alleged oral confession made by him while subject to police interrogation immediately following his arrest without being adequately warned of his constitutional rights as defined by the Supreme Court of the United States in the case of Miranda v. State of Arizona.[1]
During the trial, and in the absence of the jury from the courtroom, appellee proffered testimony of a police officer regarding an alleged confession made by appellant. In response to questions by the prosecuting attorney, the police officer testified that before interrogating appellant the latter was warned of his right to remain silent and that anything he said could be used against him in court; and, that he had a right to an attorney to represent him if he so desired. Upon this showing the trial court overruled appellant's objection to the proffered confession, whereupon the witness testified that during his interrogation appellant admitted shooting the deceased, and that he did so because the deceased was taking advantage of appellant's little friend. The alleged confession testified to by the police officer included not only appellant's admission of having shot the decedent, but his motive for doing so.
In the case of Woods v. State[2] the Third District Court of Appeal, speaking through Judge Pearson, paraphrased the holding by the United States Supreme Court in the case of Miranda v. State of Arizona, supra, as follows:
"The United States Supreme Court in Miranda declared that `unless and until' the prosecution demonstrates at trial that `prior to any questioning' it has warned an individual `taken into custody or otherwise deprived of his freedom by the authorities in any significant way and * * * subjected to questioning' that `he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires,' `no evidence obtained as a result of interrogation can be used against him.' The Court also declared that an individual can waive these rights (after he has been appropriately warned and been afforded an opportunity to exercise his rights throughout an interrogation) and agree to answer questions or make a statement; but the prosecution also has the burden of demonstrating at trial the waiver of any rights before any evidence obtained as a result of interrogation can be used against an individual."
It becomes apparent from the holdings in both the Woods and Miranda decisions that the warnings given appellant in the case sub judice were not sufficiently adequate to render admissible the alleged confession made by him. He was not advised of his right to consult with counsel prior to any interrogation by the police officers, nor was he advised that counsel would be furnished him at state expense if he were financially unable to employ counsel from his own resources.
In his opening statement to the jury appellant's counsel stated that appellant admits he shot and killed the decedent, but would establish by competent evidence *500 that he did so in self-defense. The record reveals that in adducing testimony in his own behalf appellant established by the testimony of one of his witnesses that prior to his arrest he called a police officer and admitted having shot the decedent. Even though the admission of appellant's confession into evidence constituted error because the interrogating officers failed to warn appellant of his constitutional rights as set forth in Miranda, supra, the part of the confession which admitted that appellant shot the decedent would be harmless error and not grounds for reversal. The confession, however, as testified to by the police officers went much further than to merely admit that appellant shot the decedent. The confession also purported to reveal the motive which prompted appellant to do the shooting which resulted in decedent's death. This part of the confession is the only evidence adduced by the prosecution purporting to establish appellant's motive for committing the crime. In view of the fact that defendant was relying upon a plea of self-defense to prove his innocence, the portion of his alleged confession which purported to ascribe a motive for his act inconsistent with self-defense was inculpatory and extremely prejudicial. Because of the failure of the prosecution to establish that appellant was adequately warned of his constitutional rights as defined by Miranda and Woods, supra, the confession was illegally obtained and the court erred in admitting it into evidence over appellant's objection. We reach this conclusion with considerable reluctance because the record reflects overwhelming eyewitness testimony establishing defendant's guilt of the crime charged. The purported confession made by him was merely cumulative and added little if anything to the evidence already adduced concerning defendant's guilt. Under the circumstances we find it most difficult to understand why the prosecuting officer was willing to incur the risk of reversal by insisting upon the admission into evidence of the illegal confession obtained by the police officers in view of the highly questionable necessity for doing so. By taking such risk, the expense of the initial trial has been wasted and the time of the trial court and this court in considering this case has been needlessly encumbered. The necessity for reversing convictions of this kind in order to assure compliance with the technical requirements of law causes consternation among laymen and brings the entire judicial system into disrepute. It is to be hoped that instances such as this will be avoided in the future by those charged with the prosecution of crime in our state.
Since we find it necessary to reverse the judgment appealed and remand the case for a new trial, it would be inappropriate for us to pronounce a decision on the remaining two points raised in appellant's brief. These points question the ruling of the trial court in excusing six jurors for cause during their examination on voir dire merely because they stated they had conscientious scruples against the infliction of capital punishment or because they did not want to be placed in the position of having to pass judgment on whether the death penalty should be inflicted on a person found guilty of first degree murder. Appellant relies upon the recent decision of the Supreme Court of the United States in the case of Witherspoon v. State of Illinois[3] for the proposition that it is error for a trial court to excuse a juror for cause merely because he admits to having conscientious scruples against the infliction of capital punishment. The Witherspoon decision was not rendered until long after the case sub judice was tried. Whether Witherspoon is to be accorded a retroactive application has not yet been decided. In any event, it is assumed that in the future both the trial courts and prosecuting officers of this state will adhere to the rulings pronounced in the Witherspoon decision in making or passing upon challenges of jurors for cause on the ground of conscientious *501 scruples concerning the infliction of capital punishment.
The judgment appealed is reversed and the cause remanded for a new trial.
CARROLL, DONALD, J., concurs.
RAWLS, J., dissents.
RAWLS, Judge (dissenting).
For the reasons hereinafter stated it is my view that the tainted "confession" referred to in the majority opinion does not fall within the scope of the Miranda decision in that it was not a product of "* * * incommunicado interrogation * * * in police-dominated atmosphere."
Although Miranda apparently traveled up to the last mile of infinity of constitutional rights in precluding confessions procured from one charged with the commission of a serious crime, it did not traverse that final mile. Of significance is the following excerpt stated therein:
"The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." (Emphasis supplied.)
It is incumbent that certain portions of this record be viewed with the above excerpt from Miranda in mind.
Appellant Abram told the officers (who were notified to go to Abram's home to pick him up) that he had already called the police and told them that he was going to give himself up. When the City police officers arrived, Abram was changing clothes  getting out of the bloody ones. They waited for him to change. The pistol was in the room. Abram asked them if the victim was dead. Without handcuffs, he was put into the cage in the police car. Abram while in the car started the conversation, and said he wanted to talk about it. The City police officers didn't want to become too much involved. They told him it was a County case and they would turn him over to the County. Nevertheless, the officer said:
"* * * We warned him of his rights. he didn't have to tell us anything. We told him he had a right to be heard by an attorney, if he chose to and anything that he said could be held against him. We notified him of his rights. Also, we told him this was a County case, and we were City men and he didn't have to say anything to us, if he didn't want to.
"Q. Did you tell him that anything he said could be used against him?
"A. Yes, sir.
"Q. Did you, or anyone in your presence, beat or intimidate Willie Abram in any way to get him to talk to you?
"A. No, sir."
Abram knew one of the officers. He told him he shot the man with the gun. He said he unloaded the gun. The officer asked him how many bullets it held. Abram said "eight or nine." He further said he shot him because he was "messing" with his little friend, Al.
It is my view that the testimony of the officer was admissible in that the statements by Abram were volunteered by him; the record clearly reflects that the accused was "* * * not run through menacing police interrogation procedures" or subjected to such an "* * * in custody interrogation" as to impeach the clear voluntariness of his statements, as contemplated by Miranda.
NOTES
[1] Miranda v. State of Arizona, 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694, 726.
[2] Woods v. State (Fla.App. 1968), 211 So.2d 248, 249.
[3] Witherspoon v. State of Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776.